12393

NEELY y. LOVE *ET AL.*

(142 S. E., 623)

MORTGAGES—PRINCIPAL AND AGENT—VENDOR AND PURCHASER—ASSIGNEE HELD NOT ENTITLED TO FORECLOSURE EVIDENCE SHOWING PAYMENT TO ASSIGNEE'S AGENT WITHIN APPARENT SCOPE OF AUTHORITY AND GOOD FAITH OF PURCHASERS.—In assignee's action to foreclose mortgage, evidence of mortgagor's payment to assignee's agent and attorney within apparent scope of authority and evidence that defendants were innocent purchasers in good faith *held* to support judgment denying foreclosure.

Before FEATHERSTONE, J., York, October, 1925. Affimed.

Action by Mrs. M. M. Neely against W. A. Love and another. Judgment for defendants, and plaintiff appeals.

The report of the Special Referee, decree of the Circuit Court, judgment, and exceptions are as follows:

REPORT OF SPECIAL REFEREE

To the Court of Common Pleas:

Pursuant to an order. of the Court herein, referring it to me as Special Referee to take the testimony and report my conclusions of law and fact upon the issues made by the pleadings, I submit the following report:

I. STATEMENT OF THE ISSUES

The complaint of Mrs. Martha M. Neely, the plaintiff herein, alleges substantially as follows:

(1) That on December 22, 1919, F. P. Love, late of York County, executed and delivered to J. S. Brice, attorney, his certain promissory note of that date, in the sum of $2,000.00, payable with interest at 7 per cent. per annum from December 24, 1919, in installments of $500.00 and accrued interest on the 24th day of each succeeding December thereafter until paid in full, principal and interest.

Note: As to effect of payment of mortgage to person with apparent authority to receive same, see 19 R. C. L., 443; 3 R. C. L., Supp. 947.

(2) That, to secure this note, the said F. P. Love executed and delivered to said J. S. Brice, attorney, his mortgage of same date on two tracts of land in York County, containing 112 and 125 acres, respectively, the same being particularly described in the complaint; that said mortgage contained the customary stipulations as to the payment by the mortgagor of attorney's fees and costs of collection in case of the debt secured being collected by suit or action, or of the mortgage being placed in the hands of an attorney for collection, suit, or foreclosure.

(3) That of the $2,000.00 covered in said note and mortgage, $1,200.00 was the money of the plaintiff which J. S. Brice, as attorney, was loaning F. P. Love for plaintiff, and that, in order to secure said equity of plaintiff, J. S. Brice thereafter, on or about the 24th day of December, 1919, by indorsement on said note and mortgage, did assign and transfer the same to the plaintiff, Mrs. Martha M. Neely.

(4) That plaintiff is the legal owner and holder of said note and mortgage. That the condition of said mortgage has been broken, and that there is due the plaintiff on said note and mortgage the sum of $1,200.00, with interest thereon from December 24, 1919, at 7 per cent. per annum, together with attorney's fees as provided in said mortgage.

(5) The complaint further alleges, upon information and belief: (1) That the defendants Wm. A. Love and A. C. Hargett are in possession of the real estate therein described, and that they claim some interest therein, but that such interest as they may have in the premises is subject to the lien of plaintiff's mortgage covering the same; and (2) that the defendant Mary W. Lee claims a lien on said real estate by reason of a mortgage executed by the defendant A. C. Hargett to A. L. Gaston and by A. L. Gaston assigned to her, but that such lien, if any, is junior to the lien of the plaintiff's mortgage referred to in the complaint.

The prayer of the complaint is: That the Court fix the amount due the plaintiff upon the note described therein at

$1,200.00, with interest thereon at 7 per cent. per annum from December 24, 1919, and that a reasonable attorney's fee be added as a part of said debt; that the mortgage described in the complaint be foreclosed, the property sold, and the proceeds, after payment of any and all taxes or assessments thereon and the costs of the action, applied to the payment of the debt secured, the remainder, if any, to be applied according to law, and for such other and further relief as may be just and equitable.

The defendants William A. Love and A. C. Hargett, answering separately, admit that they are in possession of the lands described in the complaint, the same having been subdivided into three tracts designated as tracts A, B, and C, William A. Love being in possession of tract C, containing 117½ acres, and A. C. Hargett in possession of tracts A and B, together containing 116 acres.

These defendants allege, in substance: (1) That they are the owners of said lands, having purchased the same from the heirs at law of F. P. Love, deceased, for valuable consideration, and without any notice or knowledge of the claim set up by the plaintiff in her complaint; (2) that J. S. Brice was the attorney of the plaintiff to whom she had intrusted the matters referred to in the complaint, that she is bound by all of his acts in regard thereto, and that the note and mortgage referred to in the complaint were paid in full to J. S. Brice, attorney, in settlement of the debts of the estate of F. P. Love, deceased, by a sale of the lands belonging to his estate to these two defendants in good faith for a valuable consideration; and (3) that plaintiff's claim is unjust, inequitable, and null and void.

The answer of Hargett also admits the execution to Mary W. Lee of the mortgage referred to in the next paragraph, and alleges that the same was made in good faith, and without any notice or knowledge of the claim set forth by the plaintiff in the complaint.

The defendant Mary W. Lee made answer to the complaint, alleging: (1) The execution by the defendant A. C. Hargett of a mortgage upon the tract of 116 acres to A. L. Gaston, attorney, on March 31, 1923; (2) the assignment of said mortgage to her; (3) that the lending of her money was the consideration thereof; (4) that same was executed without any notice or knowledge of the alleged claim of the plaintiff; and (5) that this mortgage is the first and only lien upon said premises.

The defendants, in their respective answers, ask for the dismissal of the complaint, with costs.

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

Upon the issues thus joined, considerable testimony was taken and documentary evidence presented; the same being herewith filed as a part of the record in his case.

A fundamental fact or circumstance to be considered in deciding the issues in this action is that the claims of the plaintiff and the defendants have the same origin, all being predicated upon, and derived from, the former ownership by F. P. Love of the lands described in the pleadings. The mortgage set up by the plaintiff assumes this ownership, or admits it by necessary implication, and, since the complaint alleges that the defendants William A. Love and A. C. Hargett are in possession, which allegation is admitted by these defendants, it is only necessary for the latter to connect with this common source in order to establish their alleged titles to the property which is the subject-matter of the action.

Other fundamental facts, which enter largely into the matters before me for consideration, are to be found in the documentary evidence which has been presented.

There is no dispute about the fact that the note and mortgage set forth in the complaint were executed as therein stated. Neither of these papers were offered in evidence by the plaintiff, but the note and mortgage were referred to in the testimony of the plaintiff's witnesses and the clerk's

· record of the mortgage was introduced. The original note and mortgage were introduced by the defendants, and both sides are entitled to the benefit of both papers as evidence.

The note and mortgage bear date of December 22, 1919, and they were made payable to J. S. Brice, attorney, as stated in the complaint. The note shows that two days later, an assignment was executed on the back thereof by the said J. S. Brice, attorney, in language and form as follows:

"The within note and mortgage securing the same to the amount of twelve hundred dollars, for value received is this day assigned, transferred and set over to Mrs. Martha A. Neely this 24th day of December, A. D. 1919.

                         "J. S. BRICE, Attorney."

The body of this assignment is typewritten, but the signature is with pen and ink, and is that of J. S. Brice, attorney. The note shows the cancellation or mutilation of this assignment by the drawing of pen and ink marks through it and through the signature of J. S. Brice, attorney, attached to it, but the markings across the face of the assignment do not destroy its legibility.

Upon this note is also indorsed the following assignment: ·

"For value received I do hereby assign, sell and transfer the within note to A. L. Gaston, Esq., without recourse, this 1st day of March, 1923.

                         "J. S. BRICE, Attorney.

"Attest:............"

Upon the mortgage is the following assignment:

"For value received I do hereby assign, sell and transfer the within mortgage to A. L. Gaston, Esq., without recourse, this 1st day of March, 1923.

                         "J. S. BRICE, Attorney.

"Attest:..............."

The body of the above assignments to A. L. Gaston, Esq., are typewritten, but the signatures are with pen and ink and are those of J. S. Brice, attorney.

Upon the face of the mortgage appears the following acknowledgment, signed by A. L. Gaston, to wit:

"The within mortgage has been paid in full and the mortgage is hereby forever satisfied, canceled and discharged this the 31st March 1923.

"A. L. GASTON, Assignee.
"In the presence of Willie Turner."

The body of this acknowledgment is typewritten, but the signature is with pen and ink, and is that of A. L. Gaston. It appears duly probated in regular form.

The foregoing acknowledgment, with proof appended, appears of record upon the face of the record of the said mortgage (same book and page) in the office of the clerk and register of mesne conveyances of York County, under date of April 4, 1923.

The F. P. Love note also shows the following memorandum on its face, to wit:

"Fully paid—A. L. Gaston, Attorney. March 31, 1923."

This memorandum and the signature thereto are in the handwriting of A. L. Gaston.

The testimony shows that F. P. Love died, intestate, on May 17, 1922; and that J. S. Brice died in November, 1923.

The testimony further shows that, at the time of the execution of the note and mortgage by F. P. Love to J. S. Brice, attorney, there was already a mortgage on the property described in the complaint in favor of William R. Carroll, of York County. This mortgage had been executed by F. P. Love to said Carroll on January 3, 1913, to secure a note of same date for $1,300.00 and interest, payable in installments. At the time of the payment and discharge of the Carroll note and mortgage, in March, 1923, there was due thereon the sum of $1,399.61. The complaint makes no mention of this note and mortgage, doubtless for the reason that they had been paid and discharged at the time of the commencement of this action. They are referred to here only for the reason that they enter into the settlement which

the heirs of F. P. Love undertook to make of the note and mortgage to J. S. Brice, attorney, and which will have attention later in this report.

I take up for consideration, first, the transactions between the plaintiff and J. S. Brice, attorney, in connection with the interest claimed by the plaintiff in the F. P. Love note and mortgage, bearing date of December 22, 1919.

The complaint, in the fifth paragraph thereof, alleges substantially, among other things, that $1,200.00 of the $2,000.-00 secured by this note and mortgage belonged to the plaintiff, and that J. S. Brice, as attorney, was lending it for her to F. P. Love. If this allegation stood alone and the evidence established it as true, then the plaintiff would be, in equity, the joint payee with J. S. Brice, attorney, of the F. P. Love note, and joint owner with him of the mortgage given to secure the same. But the complaint goes further, and in the same paragraph alleges that, "in order to secure said equity of plaintiff, J. S. Brice did thereafter, on or about the 24th day of December, 1919, by indorsement on the said note and mortgage, assign, set over, and transfer the said note and mortgage securing the same unto the plaintiff, Mrs. Martha M. Neely."

Construing the paragraph as a whole, I am unable to discover any effect that the assignment mentioned in the latter part thereof could have upon the existing rights of the parties interested in the F. P. Love note and mortgage, as alleged in the first part of said paragraph, other than to earmark the same for the benefit of said parties as well as others who might be concerned about said paper. This being my view of the proper construction of this paragraph, I would have to hold that, but for the other allegations of the complaint, and particularly of Paragraph 7 thereof, alleging ownership by plaintiff of the F. P. Love note and mortgage and that $1,200.00 thereof and interest is due and owing to her, my consideration of the testimony would be limited to the question of whether the evidence shows that plaintiff's

funds in the amount stated entered into and formed a part of the loan found covered by the F. P. Love note and mortgage. As I view the complaint and testimony tendered in support thereof, plaintiff is standing, not only upon the allegation that her money went into the loan to F. P. Love, but also upon the assignment of this paper in consideration of the money which J. S. Brice received at her hands, and which is evidenced by her check to him of date of December 24, 1919.

Whether the plaintiff's money went into the F. P. Love note and mortgage, or was advanced to J. S. Brice, attorney, as consideration for an assignment of an interest of the plaintiff in said note and mortgage, the rights and interest of the plaintiff in said note and mortgage would be substantially the same, as I see the matter; the principal effect of founding her claim upon both grounds being in the wider scope that would be allowed in the taking of the testimony. I have considered the testimony as a whole in an endeavor to arrive at a correct conclusion as to the rights and interest which the plaintiff had, and may now have, under the F. P. Love note and mortgage as against the defendants in this action.

The evidence leaves no doubt in my mind that J. S. Brice, attorney, received plaintiff's check (Exhibit B) for $1,-200.00 on December 24, 1919, and that, on the same day, he executed the assignment on the back of the note, which was afterwards, at some time and for some unexplained reason, marked out. The only indorsement on the check is that of J. S. Brice, attorney, and there is nothing to show that it ever passed through the hands of F. P. Love. The stamp of the bank impressed on the check shows that it was paid on January 1, 1920, which was 10 days later than the date of the note and mortgage, and 8 days after the execution of the assignment. The mortgage was recorded December 24, 1919, indicating, *prima facie,* that the loan by J. S. Brice, attorney, to F. P. Love was completed on that day. There is nothing in the form of the assignment to indicate

that it was executed to secure funds entering into the loan to F. P. Love. The form would rather indicate that "J. S. Brice, attorney," received the money, and, if we were in the realm of conjecture, it would be just as reasonable to suppose that the money was used for a loan to some other person as that it went into that to F. P. Love. None of the witnesses had positive knowledge upon the subject. Mr. Neely's testimony shows that the only knowledge he had of the note and mortgage was from having obtained the same, or the note, from the box of his mother, at her home, in March, 1921. He testified that, for a consideration of $1,-200.00 advanced by his mother, J. S. Brice, attorney, assigned the F. P. Love note, in the sum of $2,000.00, to the plaintiff on December 24, 1919, but he admits that the only knowledge he has as to the date of the assignment is derived from his afterwards having had the note bearing the assignment in his possession. Mrs. Neely, the plaintiff, is under the impression that F. P. Love received the $1,200.00 of her money, and at one time she says, "Mr. Love got my money"; but she nowhere states that she actually saw it delivered to him, and she could readily infer and believe that he received her money from a knowledge of the partial assignment to her on the back of the note. Mr. Brice's loan ledger, which was placed in evidence, showed nothing as to the disposition of the plaintiff's money and nothing as to the transaction between J. S. Brice, attorney, and F. P. Love.

Taking the testimony as a whole, documentary and oral, I do not feel warranted in finding that the plaintiff's money entered into and formed a part of the $2,000.00 loaned by J. S. Brice, attorney, to F. P. Love on the note and mortgage described in the complaint, but I do find, as matter of fact, that J. S. Brice, on December 24, 1919, received the plaintiff's check for $1,200.00, payable to J. S. Brice, attorney, which check was afterwards collected by him, and that, in consideration of the funds so received, he executed on the note described in the complaint the assignment above

set forth, and I conclude, as matter of law, that the plaintiff became, in equity, through said assignment, a joint owner with J. S. Brice, attorney, of said F. P. Love note and mortgage to the extent of her funds so received by J. S. Brice, attorney, and which was the consideration for said assignment.

The defendants, in support of the titles set up by William A. Love and A. C. Hargett in the respective answers of these defendants, introduced the judgment record of the Court of Common Pleas of Chester County in the action of *Mrs. Mary K. Love et al. v. Mary K. Burris et al.* A. L. Gaston, the attorney for the estate of F. P. Love, who was also one of the attorneys for the plaintiffs in the action just stated, testified, and the judgment record in said action shows, that it was brought for the purpose of selling the real estate of F. P. Love in aid of assets for the payment of his debts, including the note and mortgage to J. S. Brice, attorney, set forth in the complaint in this action, and the William R. Carroll note and mortgage, already referred to in this report.

The testimony of A. L. Gaston and said judgment record further shows: That the heirs of the F. P. Love estate had been offered what were deemed fair prices for all of the lands of said estate, and which they were desirous of accepting, but that, as two of the heirs were minors, it was necessary to obtain a decree of the Court authorizing the acceptance of said offers and the conveyances of said minors' interests in the lands. A. L. Gaston further testified, and said record shows, that the estate of F. P. Love embraced a house and lot in the city of Chester, in Chester County, also under mortgage, and that some of the heirs were residents of said city and county; the purpose and scope of said action being to sell all the lands of F. P. Love in York and Chester Counties. The record shows that all of the parties in interest in said action were properly before the Court, and that the decree therein provided, in substance, among

other things, that the clerk of Court of Chester County sell and convey the undivided interests of the minors, defendants in said action, in one of the tracts into which the York County lands had been subdivided, consisting of 117½ acres, to William A. Love, and that plaintiffs in said action, who were the adult heirs, unite with said clerk and execute a deed of their undivided interests in the same tract to the said William A. Love, at a price of $20.00 per acre to be paid by him for said lands upon the execution of said respective deeds. The decree in said action further directed, in substance, that the said clerk sell and convey the undivided interests of the defendants (minors) in said action in the other two tracts into which the York County lands had been subdivided, together containing 116 acres, to A. C. Hargett, and that plaintiffs in said action unite with said clerk and execute a deed of their undivided interests in said lands to the said A. C. Hargett, at the price of $1,667.00 for the lands as a whole, to which was to be added the costs of the action and certain expenses which had been incurred in previous efforts to sell said lands, the same to be paid by said A. C. Hargett upon the execution of said respective deeds. The defendants introduced in evidence the deed of the adult heirs of F. P. Love to William A. Love covering the tract of 117½ acres, and the deed of said adult heirs to A. C. Hargett covering the remainder of the York County lands of the F. P. Love estate, containing 116 acres, and in connection with said judgment record presented other documentary evidence showing conveyances to William A. Love and A. C. Hargett, respectively, of the interests of the minor heirs in said respective tracts of land, and said judgment record shows the confirmation by the Court of the said conveyances of the minors' interests.

I find from the testimony that the two tracts so conveyed as above recited are identical with the lands described in the complaint, and that the defendants William A. Love and A. C. Hargett are now, respectively, in possession of the

said tracts of 117½ and 116 acres, as purchasers thereof for full value, and I conclude, as matter of law, that they are the owners in fee of the same.

The defendants William A. Love and A. C. Hargett, in pleading ownership of the lands described in the complaint, and the defendant Mary W. Lee in setting up her mortgage as a lien upon the Hargett tract, allege that they acquired their respective titles and interest without any knowledge or notice of the claim set up by the plaintiff in her complaint, or, stating their said contentions in the familiar vernacular of the law, that they are purchasers for value without knowledge or notice of plaintiff's alleged claim.

The record in the case of *Mrs. Mary K. Love et al. v. Mary K. Burris et al.* show that neither William A. Love nor A. C. Hargett were parties to said action. The oral testimony shows that neither of these defendants had any actual knowledge or notice of the assignment of J. S. Brice, attorney, to Mrs. Martha M. Neely indorsed upon the F. P. Love note, or of any claim of any interest by Mrs. Neely in said note and mortgage on the F. P. Love lands at the time of their purchases of the same. The F. P. Love note and mortgage were payable to "J. S. Brice, attorney." The said mortgage was recorded in the office of the register of mesne conveyances of York County on December 24, 1919, but neither the note thereby secured nor the assignment thereon to Mrs. Neely was placed on record in said office. J. S. Brice, attorney, on March 1, 1923, by indorsement on the mortgage, assigned the same to "A. L. Gaston, Esq.," the said assignment being set out above. On March 31, 1923, A. L. Gaston, assignee, indorsed and executed on the face of said mortgage, the paper purporting to be a satisfaction of the same, which is also set out above. About the time of the payments by William A. Love and A. C. Hargett of the purchase money for their respective tracts of the F. P. Love lands, the above-mentioned assignment by J. S. Brice, attorney, to A. L. Gaston, Esq., and the above-mentioned

satisfaction by A. L. Gaston, assignee, were recorded upon the face of the record of said mortgage in the office of the register of mesne conveyances of York County.

The notice from the records in the clerk's and register's office therefore was that J. S. Brice, attorney, who had been the legal owner and holder of the F. P. Love mortgage, had assigned the same for value to A. L. Gaston, Esq., and that it had been paid by the latter and extinguished, and this is all the notice that is imputable to the defendants Love and Hargett.

The learned counsel for the plaintiff contend, *inter alia,* that the addition of the word "attorney" to the name of J. S. Brice in the F. P. Love note and mortgage served as a "warning and declaration" to every one reading the paper that J. S. Brice was not the owner thereof, and could not assign it to A. L. Gaston. I cannot bring myself to adopt this view. I believe the general doctrine, and that of our own state to be, that such a suffix to the name of the payee of a note or other obligation, without more, is merely *descriptio personæ,* and that such a note or obligation is payable to the payee or obligee so described personally. There is an exception to the rule where the suffix used is that of "cashier" or other appellation indicating that the payee named is the fiscal officer of a bank or corporation, but the case at bar is not within the exception. I cite the following authorities in support of the doctrine stated: I Am. & Eng. Enc. of Law (2d Ed.), 1047, 1048; 1 Dan. Neg. Inst. (5th Ed.), § 301. *Wallace v. Langston,* 52 S. C., 152; 29 S. E., 552. *Moss v. Johnson,* 36 S. C., 551; 15 S. E., 709. *Pryor v. Coulter,* 1 Bailey, 517. *Duvall v. Craig,* 2 Wheat., 45; 4 L. Ed., 180. *Hunt v. Rhodes,* 1 Pet., 1; 7 L. Ed., 27. *Lutz v. Linthicum,* 8 Pet., 165; 8 L. Ed., 904.

The legal effect of the note and mortgage to J. S. Brice, attorney, being that they were payable to J. S. Brice personally, and that he could transfer the title to the paper by his assignment thereof with the same suffix added, the purchaser

in good faith would not be put on inquiry regarding said assignor's interest in said paper. The record of the transfer of said paper in the office of the register of mesne conveyances of York County did not show the assignment to Mrs. Martha M. Neely of an interest in said note, and an inspection of the records of said office would have indicated that the defendants were receiving a good and unincumbered title to the lands they were purchasing from the heirs of the F. P. Love estate.

I conclude, as matter of fact, that the defendants William A. Love and A. C. Hargett purchased the two tracts of land referred to above, and of which they are now respectively in possession, without notice or knowledge, actual or constructive, of the claim set forth by the plaintiff in her complaint in this action.

The testimony shows that the mortgage set up by the defendant Mary W. Lee has been discharged since the commencement of this action, eliminating this defendant from the controversy herein, and making it unnecessary to consider the issues made by the pleadings between the plaintiff and this defendant.

The conclusion which I have announced, if correct, must result in a dismissal of the plaintiff's complaint herein, but I deem it just and proper that I go further and consider this other main question raised by the pleadings, namely: Have the note and mortgage set up in the complaint, considered as obligations of the estate of F. P. Love, been paid and discharged?

In answering this main inquiry, three subordinate questions are involved, to wit: (1) Was J. S. Brice the agent of the plaintiff for the collection of her interest in the F. P. Love paper? (2) Did J. S. Brice have apparent authority to receive payment of the F. P. Love note and mortgage? (3) Were the transactions between J. S. Brice, attorney, and A. L. Gaston, attorney, to be deemed a collection of the F.

P. Love paper, or must they be held a sale thereof in excess of the authority, apparent or real, of J. S. Brice, attorney?

The defense of payment being an affirmative one, the burden of establishing it is upon the defendants. What does the testimony show?

John A. Neely, son of the plaintiff, testified substantially among other things, that he had been the agent of the plaintiff since March, 1921; that J. S. Brice was the attorney of the plaintiff "for some years," and had made loans for her from as far back as 1912 or 1913; that J. S. Brice had authority to collect, and had collected, both principal and interest on loans which he had made for the plaintiff; that in December, 1922, he delivered the F. P. Love note and mortgage to J. S. Brice for the collection of the interest thereon and to change the mortgage to two of the children of F. P. Love who had bought the place and were to carry the $1,200.00 loan on the lands. He testified further that the plaintiff never received the amount due her under the Love mortgage. He produced plaintiff's bank pass book, introduced in evidence, from which it appeared that plaintiff, in April, 1923, had collected a check of J. S. Brice, attorney, for $288.92 and deposited the proceeds in the bank; the said deposit being earmarked "Pierce Love money." In this connection it is to be noted that defendants' counsel later introduced the canceled check of J. S. Brice, attorney, corresponding with this entry in plaintiff's pass book, and also earmarked in the same way.

Mrs. Neely, the plaintiff, testified substantially as follows: That Mr. Brice had been her attorney in "putting out" her money, and had handled this business for her for a good many years; that she had been looking for collections from loans which he had made for her; that he had no authority except to collect interest; that she did not want a loan, unless it was good, and that, if the loan was good, she wanted it to stay and collect the interest; that she wanted her money on land, "the safest thing." She said that Mr. Brice had

collected loans for her, and that when he did this he would put the money in the bank, get her advice, and let it out again; that she knew nothing about the F. P. Love loan, "only Mr. Love got her money"; that Mr. Brice had not given her anything when the Love loan was made; that she knows there was a Love paper, and it was for $1,200.00; that her son John A. Neely is her agent, and he "goes over and sees all her papers that Mr. Brice had." She said that about $200.00 interest had been paid on somebody's loan, she did not know whose, but that "he" did not pay the whole thing. Mrs. Neely further testified that Mr. Brice had no authority to sign her name to "satisfactions"; that she never authorized him to collect the Love paper; that neither her daughter, Miss Ella J. Neely, nor her son, John A. Neely, each of whom had been her agents, had any authority to sign her name. In answer to a question as to whether it would have been all right with her if Mr. Brice had collected the Love paper as her attorney, she answered that, if he collected it, he did not give it to her. This witness was not questioned about the assignment on the Love note, and gave no testimony in regard to it.

The defendants introduced the ledger of J. S. Brice, attorney, containing records of the transactions between him and the plaintiff, Mrs. Martha M. Neely. It appeared from the testimony that the records of these transactions were not complete, and that plaintiff had turned over funds or money to Mr. Brice in several instances which did not show in the book. This book and the cancelled bank checks of J. S. Brice, attorney, several of which were introduced, did show that Mr. Brice had been making loans for Mrs. Neely and collecting principal and interest thereon for a long period prior and up to some time in the year 1922.

W. W. Lewis, one of the attorneys of the J. S. Brice estate, who had produced and identified the ledger and checks above mentioned, testified that J. A. Neely came to his office in the spring of 1924, at which time he mentioned the

F. P. Love paper of $2,000, saying that there was an indorsement or assignment of $1,200 to Mrs. Neely; that this $1,200 was furnished on December 24, 1919; that the interest thereon had not been paid; that the paper was turned over to Mr. Brice on December 28, 1922; and that "Mr. Brice had remitted $288.92 on the F. P. Love paper." He testified that he had made a memorandum at the time covering the statements of Mr. Neely, and the same was referred to in giving his testimony. He said that his recollection was that Mr. Neely said to him on this occasion that the Love paper was placed with Mr. Brice for collection.

The defendants introduced two letters of J. S. Brice, one to Mrs. F. P. Love, of date of March 23, 1922, in which detailed statements are made as to the amounts then due on the papers to Wm. R. Carroll and J. S. Brice, attorney; and the other to F. T. Love, a son of F. P. Love, of date of February 3, 1923, referring to the same papers, and indicating that, unless payments are made thereon, the writer would be "forced to foreclose." A. L. Gaston testified that these two letters were turned over to him by the heirs of F. P. Love when he was employed to bring the suit, already referred to in this report, to sell the lands of F. P. Love in aid of assets.

Mrs. A. C. Hargett, a daughter of F. P. Love, testified, among other things, that she had lived on the F. P. Love lands for 19 years; that she knew of the mortgage to Mr. Brice; that he was "going to foreclose"; that her brother had been trying to sell the lands at auction; that none of her brothers were farmers at the time Mr. Brice was urging payment; and that they were not planning to buy the land.

I have endeavored, in the foregoing, to fairly state the salient facts in the evidence, oral and documentary, bearing upon the subject of the authority of J. S. Brice in regard to his transactions with and for the plaintiff, but I have had all of the testimony in view, and have duly considered all of it in arriving at my conclusions set out below.

As matter of fact, or rather, of mixed law and fact, I find that J. S. Brice was the duly authorized and trusted agent and attorney of the plaintiff in lending money for her, and in collecting principal and interest on the same, for a period of several years embracing the times of the execution of the F. P. Love note and mortgage set out in the complaint and of the assignment of J. S. Brice, attorney, indorsed on said note.

But the plaintiff's witnesses say, when it comes to the F. P. Love paper, that J. S. Brice's authority was limited to the collection of interest. The testimony of W. W. Lewis bearing upon this matter has already been stated. The letters of J. S. Brice to Mrs. F. P. Love and F. T. Love show that he was making active efforts to collect the entire debt, principal and interest, as if clothed with full authority in the premises, and that he was pressing the Love paper for payment. The testimony does not harmonize on this point, but, viewing it as a whole, and testing it by the law applicable thereto, I do not deem it necessary to pass upon this, the first of the subordinate questions above stated, for the reason that I deem its consideration immaterial to the ultimate determination of the issues in this case.

Coming to the second question: J. S. Brice, attorney, had negotiated the loan for which the F. P. Love paper was given. The note and mortgage were delivered to him by the plaintiff, or her agent, on December 28, 1922, and were admittedly in his possession from that date to the time of their transfer to A. L. Gaston, Esq., and he was pressing vigorously for their payment. Neither the mortgagor nor any of his heirs, successors or representatives had received any notice that the authority of J. S. Brice was limited to the collection of interest on the paper which had become wholly due, and he was asking for the payment of the whole debt, principal and interest. These circumstances, about which there is no dispute, gave to J. S. Brice, attorney, apparent authority to collect the F. P. Love note and mortgage, prin-

cipal and interest, and, unless there are other facts or circumstances in the case to make a different view necessary, I would have to hold, as matter of law, that those due to make payment of said paper would be fully warranted and justified in making payment thereof to J. S. Brice, attorney. I believe this view to be fully supported by the authorities. 20 Am. & Eng. Enc. of Law (2d Ed.), 1059; 31 Cyc., 1371; 19 R. C. L., 443; *Cone v. Brown,* 15 Rich., 262.

Was there anything in the circumstance of the assignment by J. S. Brice, attorney, to Mrs. Neely making it necessary to hold that the F. P. Love heirs, or their representative, would not be warranted in making payment to J. S. Brice, attorney? I think not. The F. P. Love note was, in its incipiency, a negotiable instrument. Had it been made payable to J. S. Brice, attorney, and Mrs. Neely, jointly, or the order of J. S. Brice, attorney, in one instrument, it would doubtless have been a negotiable paper, with authority in J. S. Brice, attorney, to negotiate or collect it. 1 Dan. Neg. Inst. (5th Ed.) §§ 103, 684. But the effect of his making a partial assignment thereof to Mrs. Neely was to convert it into a non-negotiable instrument. Volume 3, Code of 1922, § 3683; 1 Dan. Neg. Inst. (5th Ed.) § 668. The note and assignment, being on the same instrument, must be construed together, and meaning must be given to all the terms employed. 1 Dan. Neg. Inst. (5th Ed.) § 156. So construing the paper, I believe a reasonable interpretation thereof would be that, while J. S. Brice, attorney, and Mrs. Neely had a joint interest in the paper, J. S. Brice, attorney, had specific authority under the terms of the contract to collect it, subject, of course, to an accounting by him to Mrs. Neely for her share therein. However this may be, I find that there are very respectable authorities which hold that payment to one of several joint payees will be effectual to discharge the liability of the debtor. 22 Am. & Eng. Enc. of Law (2d Ed.), 524, and cases cited.

I have, so far, considered the effect of the assignment to Mrs. Neely as if it were intact and there had been no attempt to cancel it.    What effect did the marking out of the assignment have upon the rights and obligations of the parties interested in the F. P. Love paper?    Mrs. Neely, the plaintiff, makes no mention of the assignment or its defacement in her testimony.    J. A. Neely says that the assignment did not show the marks across its face when he delivered it to J. S. Brice in December, 1922.    Mr. Brice is not here to explain his purpose in striking out the assignment, and it must, of course, be largely matter of speculation.    His conduct in connection with the F. P. Love paper indicates that he considered himself as having authority to collect it, and, since it was arranged that he assign it to A. L. Gaston, the attorney of the F. P. Love heirs, he may have deemed it necessary or proper that he mark out the assignment in order to make the transfer complete on its face, and that this was within his authority; but, whatever his views or purpose may have been, if he had authority to make the collection, then there would be nothing wrong about his cancellation of the assignment on payment of the debt, and, even though such authority be only apparent, it must be deemed real in so far as it affected A. L. Gaston, attorney of the F. P. Love heirs, who, in his negotiations with J. S. Brice, attorney, for the settlement of the F. P. Love note and mortgage, was acting upon the latter's apparent authority.

Further, in this connection, I do not find that the testimony shows any facts brought to the attention of A. L. Gaston or of the heirs of F. P. Love that would put him or them upon notice, constructively, that J. S. Brice, attorney, was without authority to cancel the assignment to Mrs. Neely, or that said cancellation was for any other than a lawful purpose.    Mr. Gaston had arranged with Mr. Brice for the "taking up" of the Love paper, and, under the arrangement, a draft was sent by the latter to the former at Chester, with the notes and mortgages to W. R. Carroll and

to J. S. Brice, attorney, attached and assigned to A. L. Gaston, Esq.   If Mr. Gaston saw the canceled assignment to Mrs. Neely at the time of the payment of the draft, his knowledge thereof could charge him with nothing more than a presumption, either that the said assignment had been canceled before delivery to the assignee, or that it was canceled afterwards by the authority of the assignee or with her consent.   A. L. Gaston's conduct and testimony showed that he did have confidence in J. S. Brice, then a well-known lawyer of good repute in an adjoining county, and there was nothing in the testimony to show that Mr. Gaston had the least ground for suspecting that Mr. Brice was dealing dishonestly with him and his clients, or with Mrs. Neely, whom he had been serving as trusted attorney for several years. There is no fixed standard as to what state of facts will be sufficient to charge a person with constructive notice of an event or transaction, and, as said in 2 Pomeroy's Eq. Jur. (2d Ed.), § 675, "each case must, to a great extent, depend upon its own circumstances."   I refer also in this connection to the case of *Patterson v. Fertilizer Co.,* 117 S. C., 156: 108 S. E., 401, as bearing upon this matter.

I find, as matter of fact, that A. L. Gaston, attorney of the heirs of F. P. Love, paid the draft of J. S. Brice, attorney, representing the full amounts due on the notes and mortgages of F. P. Love to William R. Carroll and J. S. Brice, attorney, on March 1, 1923, in good faith, and without any knowledge, actual or constructive, of any want of authority on the part of J. S. Brice, attorney, to cancel the assignment to Mrs. Martha M. Neely, indorsed upon the F. P. Love note of December 22, 1919, and I find, as matter of law, that said A. L. Gaston, attorney, in acting upon the apparent authority of J. S. Brice, attorney, as shown by the testimony, was fully warranted and justified in making said payment.   I further find, as matter of fact, that the purpose of A. L. Gaston, Esq., in paying said draft and taking assignments of said notes and mortgages, was the payment of

the debts evidenced by said papers, and, as matter of law, that the legal effect thereof, so far as the plaintiff and J. S. Brice, attorney, were concerned, was the payment and extinguishment of the note and mortgage set forth in the complaint in this action.

The doctrine as to whom the payment of non-negotiable paper may be made is tersely stated in 2 Greenl. on Evidence, § 65, as follows:

"In regard to bonds and other securities not negotiable, the person who is entrusted to take the security, and to retain it in his custody, is generally considered as entrusted with power to receive the money when it becomes due."

It was strenuously contended by plaintiff's counsel that, even though J. S. Brice, attorney, had authority to collect the note and mortgage to J. S. Brice, attorney, the assignment of the paper to A. L. Gaston was, in effect, a sale and not a collection, and therefore transcended his authority.

Numerous cases were cited in support of the doctrine that authority to collect a note or other obligation does not carry with it the power to sell or make an assignment of the same, and I readily concede the correctness of the doctrine as a general proposition, though it must be given a reasonable interpretation; and I find the following in the text in 3 Am. & Eng. Enc. of Law (2d Ed.), 370, in connection with the statement of the general rule, to wit:

"Where, however, the assignment is for the full value of the note, judgment, or other demand or claim, the client cannot object; his attorney had authority to receive payment from the debtor, and authority to collect the same amount in such a way is necessarily implied."

In this connection, it may be said that the end accomplished by the assignment to A. L. Gaston, attorney, was substantially the same as if J. S. Brice had canceled the paper and turned it over to the debtor, and the paper, having been assigned "without recourse," was as dead to J. S. Brice,

attorney, and to Mrs. Neely as if it had been absolutely canceled.

As I view the testimony in the case at bar, the general doctrine contended for has no application. The assignment here was to operate temporarily, and was merely incidental to the collection and payment. In making settlements, it is frequently desirable that a mortgage or other security be kept alive after the debt for which it stands has been paid, for the benefit of some one having an interest to be protected in this way, and one of the recognized methods of accomplishing this is by taking an assignment of the security to the person whose interest is to be protected. 20 Am. & Eng. Enc. of Law (2d Ed.), 1055. The testimony shows that this was the purpose and method adopted in the case at bar. Mr. Gaston had paid off the debt secured by the mortgage to J. S. Brice, attorney, at the instance and for the benefit of those due to make payment thereof, and, under the doctrine of subrogation, he had already become the equitable assignee of the mortgage security. 3 Pomeroy Eq. Jur. (5th Ed.), § 1212. The formal assignment of the note and mortgage was merely the putting of this equity into legal form, and I so hold as matter of law.

There was testimony, *pro* and *con,* upon the question of the general authority of J. S. Brice, attorney, to execute satisfactions of mortgages collected by him for the plaintiff, Mrs. Neely, and upon his authority to execute satisfaction of the mortgage in question in this action, but, having come to the conclusion that the debt secured by the mortgage to J. S. Brice, attorney, considered as an obligation of the estate of F. P. Love to the plaintiff, was paid and discharged, a consideration of these questions is not deemed material. The legal effect of the payment of the debt in the manner above mentioned was the extinguishment of the mortgage as a lien in favor of the plaintiff upon the lands of the defendants in this action, and I so conclude as matter of law. In support of this conclusion, I cite the following authorities:

20 Am. & Eng. Enc. of Law .(2d Ed.), 1055–1057; *City Council v. Ryan,* 22 S. C., 349; 53 Am. Rep., 713.

In the performance of the duties assigned me, I have deemed it unnecessary, if not improper, to include a finding herein as to whether J. S. Brice, attorney, has accounted to the plaintiff for any part or all of the money paid him upon the note and mortgage set forth in the complaint. A consideration of that question has not been deemed material to a determination of the issues in this action.

### FINAL STATEMENT AND RECOMMENDATION

In concluding this report, I desire to state that I have not attempted to group my findings of fact and conclusions of law. The pleadings show that there were several main issues to be considered, and these involved subordinate questions, which I have done my best to answer fairly and correctly in the light of the testimony, stating my findings of fact and conclusions of law at the ends of the paragraphs as the subjects were considered in succession. I believe that the method adopted is a substantial compliance with the requirement of the law that findings of fact and conclusions of law be separately stated.

I desire further, in closing, to commend the courteous consideration accorded by counsel to each other and to me in the presentation of this very interesting case, and to thank them for the able assistance given me in the performance of my duties herein.

I recommend that the complaint be dismissed, and that the plaintiff pay the costs of the action.

### DECREE

This is an action for foreclosure of a certain mortgage alleged to have been held by the plaintiff, Mrs. Martha M. Neely, against the lands now owned by and in possession of the defendants. The case was referred by proper orders to

W. J. Cherry, Esq., as Special Referee, to take testimony and to report upon all issues.

The Referee has rendered his report, which is an able and elaborate one, and the case comes on to be heard before me upon exceptions to the said report by the plaintiff, Mrs. M. Neely.   The facts of the case as established by the testimony and the Referee's report are as follows:

On December 22, 1919, J. S. Brice of York, S. C., made a loan of $2,000 to one F. P. Love, and to secure the payment of the same a note and mortgage were taken for the said amount in the name of J. S. Brice, attorney.   Of the said $2,000 furnished to Love, $1,200 of the same is claimed by Mrs. Neely to have been her money, and evidence was introduced to the fact that she had placed this amount of money in Mr. Brice's hands for investment.   The record shows that Mr. J. S. Brice, who at that time was a well-known and reputable attorney of the York bar, had been Mrs. Neely's trusted agent and attorney in regard to loaning and collecting her funds for a number of years.   After the loan to Love was taken, there is testimony that Mr. Brice made an indorsement on the note that $1,200 of the same belonged to Mrs. Neely, and she claims to have had possession of the note for some time, although the mortgage remained in Mr. Brice's hands.

F. P. Love, the mortgagor, died some time in 1922. Thereafter Mr. Brice began to call on the heirs of F. P. Love for the payment of the mortgage indebtedness, stating that he would have to foreclose, and urging that they pay the indebtedness.   Some time in the fall of 1922, the heirs of F. P. Love, the mortgagor, attempted to have a sale of their lands in order to pay the indebtedness, but, finding that they were unable to make title on account of the minority of certain heirs, the matter was finally placed in the hands of A. L. Gaston, attorney at law, Chester, S. C., for the purpose of getting the indebtedness on the land cleared and the debts of F. P. Love paid.

In the meantime, the defendants Love and Hargett had promised to become purchasers of certain tracts of said lands, and Mr. Gaston instituted a proceeding to get title. A deed was executed by all the adult heirs of F. P. Love to the defendants W. A. Love and A. C. Hargett for two of the tracts, and the Court proceeding had for its purpose clearing of title, so that the purchase money could be collected from these defendants and applied to the indebtedness. At the time that Mr. Gaston instituted the suit, the records in the office of the Clerk of the Court for York County showed that the mortgage in the name of J. S. Brice, attorney, and no assignments on the same, and the letters which Mr. Brice had written previous to the commencement of this action showed that he was pressing for payment of the indebtedness. There was no assignment of record of the said mortgage, nor anything in any way to indicate to Mr. Gaston, the attorney for the Love heirs, or to the prospective purchasers, that any one but J. S. Brice, attorney, held any interest in the papers.

Mr. Gaston, knowing that Mr. Brice was pushing for payment of the indebtedness, made arrangements by letter whereby Mr. Brice was authorized to make a draft upon him with papers attached and duly assigned to A. L. Gaston, and, on the —— day of March, 1923, the draft was made by J. S. Brice, attorney, on A. L. Gaston, through the Commercial Bank of Chester, S. C., for the sum of $3,900, being the total amount due upon the $2,000 note and mortgage to J. S. Brice, attorney, by F. P. Love, and also another mortgage to one W. R. Carroll, against F. P. Love. This draft was duly paid, and the papers came into the hands of Mr. Gaston, and assignment was duly indorsed thereon by J. S. Brice, attorney, the mortgagee named in the papers, and who had possession of same.

On the note for $2,000, there appeared an indorsement of $1,200 to Mrs. Martha M. Neely, but, at the time the papers came into Mr. Gaston's hands, this indorsement was stricken

out, and this was done by Mr. Brice, as his former clerk and stenographer testified. The money for the payment of these papers was temporarily arranged for by Mr. Gaston, until an order of Court could be obtained, allowing conveyance of the minors' interest and the collection of the money from the purchasers. About 30 days later, after this assignment by Mr. Brice, the orders in the suit in Chester County were duly obtained, the purchase money duly collected from the purchasers, Love and Hargett. Mr. Gaston, as assignee of the papers, then entered a satisfaction on the back of same, filed same with the Clerk of Court for York County, and the same were duly entered upon the record.

The testimony is clear and convincing that at this time Mr. Gaston was acting for the estate of F. P. Love, and did not represent the purchaser. The plaintiff, Mrs. Neely, claims the purchaser had notice of the claim of Mrs. Neely by virtue of the erased indorsement on the note at the time the same was signed, and that, further, J. S. Brice, even though he was attorney for Mrs. Neely, and even though he may have had the right to collect papers for her, had no right to make a sale of the same and transfer the papers to Gaston.

It may be stated further that some time after Brice collected the money from Gaston on these papers he died, and, so far as the record goes, no accounting was made to the plaintiff for her moneys except for the interest collected by Brice, although the evidence shows that the amount of the draft was deposited to Brice's credit.

Upon consideration of the above facts, the conclusion has been reached that the plaintiff, Mrs. Martha M. Neely, has no right either in law or in equity to enforce any claim against the present purchasers of the land, Love and Hargett, and the report of the Referee must be sustained in full. I am particularly impressed with the following views of the case, and base my conclusions accordingly:

I. That, so far as the purchasers, Hargett and Love, are concerned, they have fully established, by the testimony,

their plea of being *bona fide* purchasers without notice. As stated above, when they purchased the land, there was on record this mortgage in the name of J. S. Brice, attorney. There was an assignment by J. S. Brice, attorney, to A. L. Gaston. There was a satisfaction by A. L. Gaston. The record was perfectly clear. There was nothing to indicate to them any interest or claim of Mrs. Neely in the said paper. The erased indorsement on the note was no notice to Gaston, attorney for the Love heirs, and, even if it had been, it was no notice to the purchasers that Mrs. Neely had any claim in the same. I, therefore, sustain the plea of *bona fide* purchasers.

II. From consideration of the evidence, I am satisfied that J. S. Brice, at the time the papers were transferred by him to Mr. Gaston, held the papers for collection, and did actually collect them. The record shows that he was pressing for payment by the several letters that he had written, and the original papers were in his possession. Therefore, since Mr. Brice had apparent authority to collect the papers, and which were in his possession, the plaintiff cannot complain that the actual collection of the same was made by reason of a transfer to Gaston rather than by actual satisfaction of the papers. The whole testimony shows that the purpose of the assignment to Gaston was not for sale by an attorney of papers for his client, but were merely an incident in the collection of the same. It is proven beyond doubt by the testimony that the assignment was made only temporarily for the purpose of the collection of the papers until the money could be collected from the purchasers. For this reason the many cases cited by attorneys for the plaintiff to the effect that an attorney has no right to sell his clients' papers, even though he may have the right to collect same, do not apply. The transaction here between Brice and Gaston was not a sale, but a collection, whereby the mortgage debt was paid in full, and the note and mortgage surrendered and canceled

of record before Brice's death, and before this suit was begun.

Furthermore, at the time the conveyance of the land was consummated to the purchasers by these defendants, they had notice by looking at the record that the papers were given to Brice, attorney, and not to J. S. Brice, as attorney. The word "attorney," therefore, used in the said papers, was not notice to any one that some third party claimed any interest in the papers, but the word "attorney" was merely *descriptio person,* and the assignment by J. S. Brice, attorney, is valid. See *Wallace v. Langston,* 52 S. C., 153; 29 S. E., 552. *Moss v. Johnson,* 36 S. C., 553; 15 S. E., 709; 20 A. L. R., 564.

I am satisfied from the consideration of the whole record with the conclusions reached by the Referee, and it is, therefore, ordered that this report be sustained, and all exceptions thereto overruled.

## EXCEPTIONS

(1) Error of the Circuit Judge in holding that mere possession by an attorney of note and mortgage which shows that it has been assigned to another, *ipso facto,* gives the one in possession authority to sell and assign the same to a third party.

(2) Error of the Circuit Judge in holding that the unauthorized drawing of lines through an assignment of a note and mortgage was a valid reassignment of said note and mortgage to the original payee, and in not holding same to be a nullity.

(3) Error of the Circuit Judge in holding that the assignment of plaintiff's note and mortgage by J. S. Brice, attorney, to A. L. Gaston, was a collection of the debt and not a sale of plaintiff's note and mortgage.

(4) Error of the Circuit Judge in holding that J. S. Brice had authority, either actual or apparent, to collect this note and mortgage.

(5) Error of the Circuit Judge in holding that the assignment on the note and mortgage to Mrs. Neely was not notice to the defendants and to A. L. Gaston that Mrs. Neely was owner of such note and mortgage.

(6) Error of the Circuit Judge in holding that, because the assignment of the note and mortgage had not been recorded, though not then required or allowed to be recorded, defendants were innocent purchasers of the mortgage without notice of plaintiff's rights.

(7) Error of the Circuit Judge in holding that plaintiff, by delivering her note and mortgage to a reputable attorney, thereby became legally responsible for and bound by such attorney's illegal acts in striking out the assignment of said note and mortgage to plaintiffs, and that such illegal act of the attorney destroyed plaintiff's rights in the note and mortgage.

*Messrs. J. Alex Neely, Jr., Robert F. Wilson,* and *Thos. F. McDow,* for appellant, cite: *As to power of attorney to dispose of client's property:* 12 Rich., 451; 15 Rich., 262; 41 L. R. A., 617; 12 A. L. R., 92; 45 S. C., 186; 4 S. C., 10; 1 DeS., Eq., 460; 136 S. E., 300. *"Sufficient notice"* to *put purchaser on inquiry:* 20 R. C. L., 346; 1 Bail. Eq., 107; 111 S. C., 322; 3 R. C. L., 1082, Sec. 288; 46 S. E., 609; 50 S. C., 241. *When principal bound by acts of agent:* 21 R. C. L., 856; 7 L. R. A. (N. S.), 752. *A forged satisfaction of a mortgage, though recorded, does not discharge the lien of the mortgage, nor does one obtained by fraud:* 119 S. E., 829.

*Messrs. Gaston, Hamilton & Gaston,* for respondents, cite: *A person with whom, or in whose name a contract is made for the benefit of another, may sue without joining with the person for whose benefit the action is prosecuted:* Sec. 356, Code Proc; 109 S. C., 196; 80 S. C., 466. *Cases distinguished:* 12 Rich., 451; 45 S. C., 186; 4 S. C., 10; 1 DeS., Eq., 461; 50 S. C., 241; 126 S. C., 273. *When*

*an attorney has possession of a note or mortgage, such possession for the true owner is sufficient prima facie evidence of an agency to receive payment:* 15 Rich., 272. *Power of attorney:* 27 S. C., 132; 138 S. C., 354. *Concurrent findings of Circuit Judge and Referee entitled to great weight on appeal:* 140 S. C., 321; 137 S. E., 343; Id., 329; 138 S. E., 177.

*Mr. John A. Marion,* also for respondents, cites: *Concurrent findings of Referee and Circuit Judge not disturbed unless clearly against preponderance of evidence:* 135 S. C., 8. *"Attorney" as used in case at bar descripta personæ:* 52 S. C., 153; Perry on Trusts, 255; 8 L. Ed., 904. *"Apparent authority of agent":* 16 Rich., 260; 136 S. C., 277; 135 S. C., 1; Id., 365; 31 Cyc., 1371; 19 R. C. L., 443; Jones on Mtgs., 964. *Cases distinguished:* 122 S. C., 511; 119 S. C., 831; 127 S. C., 562. *Ratification:* 113 S. E., 203. *A mortgage running to several persons jointly to secure a joint debt may be paid to and released by either of mortgagees:* 27 Cyc., 1389; Sec. 3683, Code; Jones on Mtgs., 958.

March 9, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The transcript of record in this case contains the following agreed statement of the case:

"This is an action to foreclose a certain real estate mortgage, covering lands owned by and in possession of the defendants W. A. Love and A. C. Hargett. The said action was begun on the 24th day of November, 1924, and was thereafter referred to W. J. Cherry, Special Referee, who in due time filed his report, finding against the plaintiff on all issues. The said report came on to be heard before Hon. C. C. Featherstone, on exceptions, and a decree was filed sustaining the report of the Referee. From the said decree exceptions were duly taken by the plaintiff and appeal made to this Court.

"The complaint raises the issue of the plaintiff's right to foreclose a mortgage executed December 22, 1919, by F. P. Love to J. S. Brice, attorney, for $2,000.00, and covering certain lands of the said F. P. Love, aggregating 235 acres. The plaintiff alleges that the said mortgage was assigned to her by the said J. S. Brice, attorney, to secure for her $1,-200.00 of her money alleged to be a part of the $2,000.00 loan by J. S. Brice to F. P. Love, and that she is still the legal owner and holder of the said note and mortgage. The plaintiff further alleges that W. A. Love and A. C. Hargett are in possession of the mortgaged premises, and that defendant Mary W. Lee held a second mortgage on the same. Foreclosure was prayed for.

"After the commencement of this action, the mortgage of Mary W. Lee was paid by the defendant Hargett, and this mortgage goes out of the case.

"The defendants Love and Hargett filed separate answers in substantially the same form, Love alleging that he was in possession of 117½ acres of the original tract mortgaged by F. P. Love to J. S. Brice, attorney, and Hargett alleging that he was in possession of a tract of 116 acres of the same tract. They further allege that they are owners of the said tract so conveyed; that the said lands were conveyed to them in separate tracts, and for full and valuable consideration by the heirs at law of F. P. Love, deceased, without any notice or knowledge of the alleged claim of the plaintiff; that the plaintiff by her own act and conduct intrusted these matters to the said J. S. Brice, as her attorney, for her and in her behalf, and is bound by his actions; that the said note and mortgage sought to be foreclosed by the plaintiff have been paid in full to J. S. Brice, attorney, in settlement of the debts of the estate of F. P. Love by the sale of lands belonging to his defendants, who purchased the same for full and valuable consideration, without knowledge or notice of the plaintiff's claim; that the said note and mortgage were by their terms in writing payable to J. S. Brice, attorney, held in his charge,

in his hands for collection, and in his custody, control, and possession, with the knowledge, consent, acquiescence, and authority, expressed or implied of the plaintiff that the said note and mortgage were paid in full to the said J. S. Brice, attorney, to settle the estate of F. P. Love, were surrendered and delivered up by J. S. Brice, attorney, indorsed in writing by him, have been fully paid, satisfied, and canceled of record before the death of J. S. Brice, and before the commencement of this action; that the defendants were *bona fide* purchasers without any notice of the alleged claim of the plaintiff; that the plaintiff's claim is unjust, inequitable, null, and void, both in law and in equity; that the plaintiff is bound by all the actions of the said J. S. Brice, attorney, to whom she intrusted all her interests, if any, in the said note and mortgage referred to in the complaint, and that any claim the plaintiff might have is against the estate of J. S. Brice, attorney, who was plaintiff's agent, and not against these defendants who were *bona fide* purchasers for valuable consideration without notice."

A careful study of the record of this case convinces us that the finding of fact by the Special Referee, concurred in by his Honor, Judge C. C. Featherstone, is amply supported by the evidence adduced at the trial of the case, and we think the conclusion reached by his Honor, Judge Featherstone, as set forth in his decree, which will be reported, is in accord with the well-recognized authorities.

The exceptions are therefore overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and is hereby affirmed.

MR. JUSTICE BLEASE (concurring in result): I concur with the conclusion that the decree of the Circuit Court should be affirmed.

For lack of proper time, I shall not undertake a full review of the dissenting opinion of Mr. Justice Cothran, but I do wish to make a few observations as to some statements made by him and to some positions he takes.

With the position of the learned justice to the effect that the plaintiff, Mrs. Neely, should not be bound by anything that Colonel Gaston, the attorney for the heirs of Mr. Love, said or did or failed to do, I am in full accord, for he was not at any time the agent or attorney of Mrs. Neely. Indeed, there is no claim on the part of the respondents, or any one else for that matter, that Mrs. Neely is bound by any work or conduct of Colonel Gaston.

Likewise I am in full accord with the position of Mr. Justice Cothran that, prior to the act of 1924 (33 St. at Large, p. 928) it was not necessary for an assignment of a real estate mortgage to be recorded to give such assignment full legal effect. This case, however, does not turn upon the failure to record the assignment of the mortgage.

In my opinion, the issues in this case can be narrowed down to just three plain questions: (1) Was Brice the agent of the plaintiff for the purpose of collecting the amount due to her on the mortgage? (2) If he was not plaintiff's agent for that purpose, did she, by her conduct, allow him to hold himself out as her agent for that purpose? (3) Did the plaintiff ratify the act of Brice in making the collection? An answer to either of these questions favorable to the respondents demands an affirmance of Judge Featherstone's decree.

The law applicable to the first two of these questions is tersely stated by Mr. Justice Cothran in *Davis v. Bland,* 138 S. C., 354; 136 S. E., 300, where he quoted the following from the authority mentioned:

"A principal is liable for the engagements, agreements, representations, and promises of the agent made either within the actual or within the apparent scope of his authority." *Goble v. Express Co.,* 124 S. C., 19; 115 S. E., 900.

In the same case of *Davis v. Bland,* this Court, through Mr. Justice Cothran, also affirmed the principle announced in the case of *Reynolds v. Witte,* 13 S. C., 5; 36 Am. Rep., 678:

"That a principal is civilly responsible for the fraudulent act of his agent where the act is done in the course of the agency and by virtue of the authority as agent."

I shall not attempt to review all the testimony. The Special Referee held that Mr. Brice was the agent of the plaintiff, and that holding was concurred in by the Circuit Judge. As there seems to be some question as to the correctness of this statement, I quote the following from the report of the Referee:

"As a matter of fact, or rather, of mixed law and fact, I find that J. S. Brice was the duly authorized and trusted agent and attorney of the plaintiff in lending money for her, and in collecting principal and interest on the same, for a period of several years embracing the times of the execution of the J. P. Love note and mortgage set out in the complaint and of the assignment of J. S. Brice, attorney, indorsed on said note."

In his decree, Judge Featherstone made the following finding:

"The record shows that Mr. J. S. Brice, who at that time was a well-known and reputable attorney of the York Bar, had been Mrs. Neely's trusted agent and attorney in regard to loaning and collecting her funds for a number of years."

In addition thereto, the Circuit Judge, at the conclusion of his decree, said:

"I am satisfied from the consideration of the whole record with the conclusions reached by the Referee. * * * "

This case is controlled, in my opinion, very much by the cases of *Leaphart v. Selby,* 135 S. C., 1; 133 S. E., 451. *Cogswell v. Cannady,* 135 S. C., 365; 133 S. E., 834. *Huggins v. McFadden,* 135 S. C., 409; 134 S. E., 35. *Land v. Reese,* 136 S. C., 267; 134 S. E., 253. *Marston v. Rivers,* 138 S. C., 295; 136 S. E., 222. *Miles v. Gadsden,* 139 S. C., 52; 137 S. E., 204, and *Miles v. Felkel,* 139 S. C., 95; 137 S. E., 329. In all of these cases there had to be a loss to one of the parties due to the fraudulent conduct of an at-

torney at law.  Two principles run through all of these cases, which appear in the syllabi from the *Leaphart case* as follows:

(1) "Where mortgagee held out firm of attorneys as money lender with general authority to act, he cannot assert to the contrary after mortgagor had made payments through such firm."

(2) "Where one of two innocent persons suffers by wrongful act of third, one most at fault is required to bear loss."

In the case of *Huggins v. McFaddin,* the decision of this Court was in favor of the mortgagee; it being held that the money paid by the mortgagor to the attorney was paid to his agent and not to the agent of the mortgagee, and the opinion of the Court was unanimous.  In all of the other cases last cited, the decisions of this Court were in favor of the mortgagors; it being consistently held that the respective attorneys were the agents of the mortgagees.  In all of these cases Mr. Justice Cothran dissented, and the chief ground of his dissent was, in most instances, based upon the principle, as stated by him in *Leaphart v. Selby,* "That a debtor owing money on written security, who pays it to another as the agent of the holder of the security, *must see that the person so paid is in the possession of the security,* or has authority, * * * to receive such payment."  (Italics added.)

In several of these cases, the proof was that the attorney did not have possession of the security for the debt at the time he made the collection of the principal, and in most of the cases there was conclusive proof of an absolute assignment of the security to a third party; the assignment appearing upon the paper without cancellation or mutilation thereof.

The position of the respondents in the case at bar meets all the requirements of the law as laid down by a majority of this Court in the cases referred to.  The respondents *have also met the main test required by Mr. Justice Cothran*

*in his former dissenting opinions,* since it was established beyond doubt that, at the time the money was paid to Mr. Brice, he was in possession of the security.

This case is almost on all fours with the very recent case of *Mortgage & Acceptance Corporation v. Stewart,* 142 S. C., 375; 140 S. E., 804. The decision of the Court in that case was unanimous in favor of the mortgagor. There Stewart purchased an automobile from Floyd Motor Company, and gave as part payment of the purchase price a mortgage on the car made direct to the Mortgage & Acceptpance Corporation. The mortgage was left in possession of Floyd Motor Company by the mortgagee, and from time to time Floyd Motor Company collected from the mortgagor payments on the debt, until the whole of the debt had been collected. Floyd Motor Company failed to remit all the money to the mortgagee, and the mortgagee attempted to make collection of the balance due it from the mortgagor. This case is even stronger than the case last mentioned, for here the mortgage was not taken originally to the plaintiff, as was done in the last-mentioned case.

There is much similarity between the facts of this case and those of *Mortgage Co. v. Gillam,* 49 S. C., 345; 26 S. E., 990; 29 S. E., 203. In that case, Corbin Banking Company, the mortgagee, assigned to the mortgage company certain notes and a mortgage, which secured the payment of the notes. Corbin Banking Company continued to collect the interest and transacted all the correspondence with the mortgagors pertaining to the matter. This Court held that there was sufficient proof of agency of Corbin Banking Company for the assignee, and held the assignee responsible for acts of the Corbin Banking Company.

Even if Mr. Brice's acts were wrongful and a fraud on the plaintiff, the plaintiff, having reaped some benefit there-

from, was bound by his acts, for it has been decided by this Court:

"A principal is liable for the wrongful acts of his agent while acting within the apparent scope of his authority, even when committed against the principal's instructions, and he cannot benefit from such acts to the prejudice of an interested third party dealing with him." *Williams v. Philadelphia Life Ins. Co.,* 105 S. C., 305; 89 S. E., 675.

Again, I call attention to the fact that the evidence in this case shows that Mr. Brice had been handling money of the plaintiff for many years, and that on several occasions he had even signed her name, without objection on her part, to satisfactions of real estate mortgages. If Mr. Brice had the authority, or apparent authority, to sign a satisfaction of a mortgage, he certainly had the authority, or apparent authority, to assign the mortgage without recourse, or to strike out an assignment appearing thereon. At least, this was a question of fact, and there is plenty of evidence to warrant this Court in properly holding that he had that authority, or apparent authority. Mr. Brice's acts clearly amounted to declarations on his part that he had the authority to transfer the paper to Colonel Gaston, and complete authority to strike out the assignment which appeared on the paper. General agency may be shown by the declarations of the agent connected with ratification of his acts by his principal. *Buist Co. v. Mercantile Co.,* 73 S. C., 48; 52 S. E., 789.

It was held in *Thompson v. Shaw Motor Co.,* 128 S. C., 171; 122 S. E., 669, that, where a general agent was acting within the scope of his actual or apparent authority in executing a note, his principal was liable on the note. If a principal can be held under the rule of apparent authority for a note executed by his agent, I do not see why the Court should not hold that likewise the principal can be held for an assignment of a note executed to the principal or owned by him.

If Mr. Brice had signed the name of Mrs. Neely to the assignment of Colonel Gaston, under the evidence of this case there were sufficient facts and circumstances to show that he had apparent authority, if not the actual authority, to so do. If he had taken that course in the matter, Mrs. Neely would clearly have been bound by his act. She would have lost her money just the same. Since Mr. Brice could have taken the suggested course, and thereby bound Mrs. Neely, the result would have been the same to her. And, since he could have adopted the mode suggested and bound her, what difference does it make that he proceeded in another manner to effect the same result?

The case of *Freeman v. Bailey,* 50 S. C., 241; 27 S. E., 686, referred to by Mr. Justice Cothran, is easily distinguished from the case at bar. In this case, the papers being made only to Mr. Brice as attorney did not disclose for whom he acted, and, even if inquiry had been made of him under the circumstances, the probability is that the inquirers would have simply been told that he had full authority to act in the matter. In the *Freeman case* the note was made to a public official, the probate judge of Greenville County. It was distinctly pointed out by the Court in that case that the Probate Judge had no authority to assign the note without the approval of the Court of Common Pleas. One dealing with a public official is charged with full knowledge as to the law pertaining to such official's acts and his right to act. There is quite a distinction between the acts of a public official and those of a private agent or attorney.

In my opinion, the case of *Wilson v. Brabham,* 126 S. C., 273; 119 S. E., 829, has little or no bearing upon the issues of this case. In that case, the assignor of the note and mortgage, the bank, was at no time the agent of the assignee of the papers. After the bank had assigned the note and mortgage, and was not in possession of the papers, the bank executed a satisfaction on a separate paper. In this case, there

was evidence of Mr. Brice's agency, and the papers were in his custody.

Much stress is laid in the dissenting opinion upon the use by Mr. Gaston of the words *"by your clients"* in his letter to Mr. Brice directing that the mortgages be assigned and forwarded with the draft for the amount due. Reference to that letter will show that Mr. Gaston used the plural "mortgages." Mr. Brice not only held for collection the mortgage which was payable to himself as attorney, but he also held a mortgage payable to one Carroll. It is clearly evident that Mr. Gaston wanted Mr. Brice to attend to proper assignment of all mortgages in his charge.

Even if Mr. Brice did not have the authority to collect the money due the plaintiff on the mortgage at the time he made the collection, by whatever manner it may have been collected, if the plaintiff thereafter ratified his act, she must be bound thereby. The evidence shows that the plaintiff, after the death of Mr. Brice, filed her claim against Mr. Brice's estate for the very money which Mr. Brice had collected from Colonel Gaston on the mortgage of the land in question. This Court has held in two recent cases that, where the mortgagee filed claim against the estate of her agent, or supposed agent, for money collected by such agent on the mortgage debt, such conduct on the part of the mortgagee was evidence of ratification of the agency to collect the money. *Miles v. Gadsden,* 139 S. C., 52; 137 S. E., 204. *Miles v. Felkel,* 139 S. C., 95; 137 S. E., 329.

But the dissenting opinion takes the position that the propositions of ratification received "scant attention" in both of the cases cited. I do not see how this statement can be justified when only one point was considered in *Miles v. Gadsden,* and, according to the syllabus, was decided as follows:

"Where mortgagee, after learning of payment by mortgagor to a supposed agent who had not remitted to mortgagee, filed a claim for the amount of such payment against

the estate of such agent, such act constituted a ratification of the payment to the agent precluding recovery against the mortgagor after agent's estate was found to be insolvent."

But it is urged by Mr. Justice Cothran that, as the Special Referee and Circuit Judge did not touch upon the question of ratification of Mr. Brice's act by the plaintiff, this question is not properly before the Court. The case of *Miles v. Gadsden* had not been decided at the time the Circuit Judge heard this cause. In all probability, if the decision had been handed down prior to the hearing in the Circuit Court, the Circuit Judge would have referred to it. But, even, if the matter of ratification was not considered in the lower Court, this Court may sustain the judgment of the Court below upon other reasoning, or, on other grounds, properly appearing in the record of the cause, than those employed by the Circuit Judge in his decree. *State v. Beaufort,* 39 S. C., 5; 17 S. E., 355.

Mr. Justice Cothran concedes as the very basis of his opinion, "Both (plaintiff and defendants) are perfectly innocent of wrongdoing; * * *" and that the issue here "is to be determined by the answer to the question, which was the more to blame in furthering the misappropriation of the money by Mr. Brice." There is not a particle of evidence to show that the defendants who purchased the land in this action ever had any dealings whatever with Mr. Brice, except such as were conducted by Colonel Gaston.

The Special Referee, W. J. Cherry, Esq., a lawyer of ability and large and varied experience, who saw all the witnesses as they testified, has found that the respondents were *absolutely innocent* of blame. In this finding, Judge Featherstone, with years of experience as a trial Judge, and thereby an able investigator of facts, has concurred. I shall not *presume* that they were wrong and that I am wiser than they are.

All the facts show that the intention of all the interested parties was that the mortgage debt should be paid, and it was

handled through the assignment to Colonel Gaston as a matter of convenience and safety until the whole deal could be consummated. As a matter of kindness to his clients, Colonel Gaston arranged the matter temporarily, and assisted the mortgagors of the land to meet the urgent demands of Mr. Brice, the agent and attorney of Mrs. Neely, that the mortgage debt be settled. I cannot bring myself to believe that the respondents, or the original mortgagors, or Colonel Gaston, should be made to suffer for an act of kindness performed by the latter. The evidence convinces me entirely that Mr. Brice was agent for the plaintiff-appellant "to put out" (using her own language) her money and to collect it for her. Unfortunately for this good woman, she trusted Mr. Brice too far. Her confidence in him caused others to have confidence. The latter should not be held blamable that she pointed the way.

In answer to the question asked in the dissenting opinion, "Why should this Court be influenced by the opinion of the Court below on a question of fact in an action in equity?" I call attention that the burden is always on the appellant to show that the Court below erred in a finding of fact. Moreover, I am firmly of the opinion that this Court should always hesitate to reverse a Circuit Judge on questions of fact. Under the Constitution of this State, men who sit in the Circuit Court as judges are required to have the same qualifications, as men and as lawyers, as are required of members of this Court. They are presumed to be indifferent in the causes which they hear. They have some advantages in ascertaining the credibility of witnesses which this Court does not possess. With some exceptions, the Judges of the Circuit Court have had much more experience than members of this Court in passing upon questions of fact, and because of that experience and peculiar training, they are really better fitted to pass upon such questions than Supreme Court Justices, who have had less experience in determining issues of fact. The question asked is easily

answered by other questions: If this Court is not to be influenced by the findings of fact by a Circuit Judge, why bother to take up the time of the Circuit Court and the litigants in hearing these causes in that Court? Why not let the equity causes come direct to this Court? The framers of the Constitution thought best to let Circuit Judges pass on these causes first. I think the plan outlined in the Constitution is best, and, even if I thought it wrong, I would bow to the power and wisdom of those who ordained the provisions contained therein.

I am frank to say that I have not taken, and have not had, the time required to examine into all the 50 cases "from the four winds," which *may* sustain some of the propositions advanced in the dissenting opinion. I find that. cases from the "four winds," like the winds themselves, because of varyings in their facts, blow in every direction. Neither have I undertaken to read the "50 more cases" which are referred to in the Century, Decennial, and Annual Digests, under the appropriate key numbers. I am aware that these publications are valuable compendiums of quick information to point to cases which bear upon the subject one may wish to investigate. Their publishers justly claim that they give the key practically to every decision rendered anywhere in the United States which has ever been published. I have learned that, because of their very completeness, they have caused the hearts of attorneys for losing litigants to beat with much hope for reversal in the Supreme Court, and that they bring great comfort to the authors of dissenting opinions. "As for me and mine," I shall endeavor first of all to stand by what I conceive to be the law as laid down by our Court. Without even going to the trouble to cite any authority to sustain the proposition, I am keeping in mind that *elementary principle of the law,* so often announced by this Court, that the principal must be bound by the acts of his agent, and also by the acts of his agent acting in the apparent scope of his authority. Without even looking into

the valuable Digests referred to, I am bold to say that at least 50 times 50 cases can be found therein to sustain this plain principle of the law. Exceptions, modifications, explanations, refinements, and distinctions, all put together from whatever winds they may come, cannot, should not, and will not, shake this bedrock of the law.

I agree fully with the decree of Judge Featherstone, and what I have said is in addition to his decree.

MR. ACTING ASSOCIATE JUSTICE THURMOND concurs.

MR. JUSTICE COTHRAN (dissenting): I do not agree with the conclusion announced in the opinion of Mr. Justice Carter, and respectfully submit herewith the grounds of my dissent.

This is an action to foreclose a mortgage given by one F. P. Love to J. S. Brice, attorney, to secure a note for $2,000.00, in which the plaintiff claims an interest to the extent of $1,200 by virtue of a written assignment by Brice to her. The defendants, purchasers of the mortgaged premises, claim that the amount due upon the mortgage has been paid in full to J. S. Brice, attorney, including the plaintiff's $1,200 interest; that in said collection Brice was acting as agent for the plaintiff; and that payment to him was payment to her.

The case was referred to W. J. Cherry, Esq., special referee, who reported in favor of the defendants. Upon exceptions, his Honor, Judge Featherstone, confirmed the report, and rendered judgment dismissing the complaint. The plaintiff has appealed upon exceptions which fairly raise the questions hereinafter discussed.

The facts are as follows:

On December 22, 1919, F. P. Love borrowed through J. S. Brice, an attorney of the York bar, $2,000, and executed a note therefor to "J. S. Brice, attorney," payable——, and secured it by a mortgage upon the premises in question.

On December 24, 1919, two days later, the plaintiff, Mrs. Neely, transmitted to Mr. Brice a check for $1,200 for

investment by him, and on the same day he indorsed upon the Love note the following assignment:

"The within note, and mortgage securing the same to the amount of twelve hundred dollars, for value received, is this day transferred and set over to Mrs. Martha A. (M?) Neely, this 24th December, A. D. 1919.

"[Signed]  J. S. BRICE, Atty."

It appears that the note, with the assignment upon its back, was delivered by Mr. Brice to Mrs. Neely. There is some doubt as to the delivery of the mortgage, which did not have an assignment upon it. John A. Neely, son of the plaintiff, in his testimony, was under the impression that both papers were delivered. His testimony, however, is vague upon the question of the delivery of the mortgage. There appears no doubt as to the delivery of the note. I will assume that the note was delivered, but that the mortgage was retained by Mr. Brice.

A daughter of Mrs. Neely was the custodian of her papers. She was killed in a railroad accident in 1921 or 1922, and, after her death, her brother, John A. Neely, came into possession of his mother's papers which had been in the custody of his sister. Among them was the Love note for $2,000. On December 28, 1922, nothing had been received by Mrs. Neely upon it, John A. Neely delivered the note to Mr. Brice.

There is a contest between the parties as to Mrs. Neely's purpose in delivering the note to Mr. Brice (through the agency of her son John A. Neely), as will be seen. The plaintiff contends that it was delivered for the purpose of having him collect the past-due interest. The defendants contend that it was delivered for the purpose of having him collect the entire unpaid amount of $1,200 and the past-due interest; of which more hereafter.

On February 3, 1923, a little more than a month after John A. Neely delivered the note to Mr. Brice, on December 28, 1922, Mr. Brice wrote a letter to F. T. Love, a son of the mortgagor, F. P. Love, who had died May 17, 1922,

threatening foreclosure of the mortgage *unless at least .the
past-due interest be paid.*

The heirs of F. P. Love, aroused by the threatening letter
of Mr. Brice, decided to have an auction sale of the property
in order to raise funds with which to satisfy the mortgages
(there was another than the Brice mortgage; the amount due
upon both was about $3,900). The sale was had, and the
defendants W. A. Love (not related to F. P. Love) and
A. C. Hargett, a son-in-law, purchased each a part of the
land.

Upon investigation of the title, it was found that certain
minor grandchildren of F. P. Love, who had an interest in
the land as heirs at law, had not been concluded by the auc-
tion sale. Consequently, an action was commenced in the
Court of Common Pleas for Chester County by the adult
heirs of F. P. Love, who had executed deeds conveying their
interests to the purchasers, against the minor heirs at law,
for the purpose of perfecting the title of the purchasers.

This action, proceeding regularly, resulted in a decree
confirming the auction sale, and directing the Clerk of Court
to execute a deed conveying the interests of the minor heirs
at law to the said purchasers. Prior to the delivery of these
conveyances, and in settlement of the entire matter, it be-
came necessary to apply the purchase money to be paid by
the defendants, purchasers, to the satisfaction of the out-
standing mortgages. That was arranged in this manner:
A. L. Gaston, Esq., who represented the heirs at law in
perfecting the title to the land, wrote a letter to Mr. Brice,
addressed to him as "attorney," dated February 20, 1923,
as follows:

"I hope to take up the mortgages which you hold on the
land of F. Pierce Love, deceased, amounting to $3,900, and
will thank you to have these mortgages assigned to me
personally, without recourse, *by your clients,* and mail them
to the Commercial Bank on March 1st, when Mr. Gage will
pay the draft." (Italics added.)

Mr. Gaston expected to be absent in Florida, and requested that the matter be handled through Robert Gage, cashier of the bank.

Accordingly on February 27, 1923, Mr. Brice drew a draft *upon Mr. Gage, cashier,* for $3,900, the amount due upon the two mortgages (Love and Carroll), and attached thereto the notes and mortgages assigned to "A. L. Gaston, Esq.," by himself, "J. S. Brice, attorney," although he had been directed by Mr. Gaston to have them assigned *"by your clients."* Mr. Gage, upon presentation of the draft, paid it, and charged the amount to Mr. Gaston's account.

I quote from the printed brief of counsel for the respondents:

"The note of F. P. Love for $2,000 to J. S. Brice, attorney, had on the back of it an assignment of $1,200 to Mrs. Martha M. Neely, the 24th day of December, 1919, *but, when the papers were received by Gaston or the bank as Chester, S. C., this assignment was canceled or mutilated by having pen and ink marks through it and to the signature of J. S. Brice attached to it.* Miss Bessie Wylie, the Clerk in Mr. Brice's office, testified that the marks through the papers were made by Mr. Brice, and before the paper was sent off." (Italics added.)

There seems to be no doubt but that the Love note of $2,000 bore the assignment from Mr. Brice to Mrs. Neely, *intact,* when John A. Neely delivered it to Mr. Brice, in December, 1922.

The assignment of the note and mortgage was held by Mr. Gaston, along with the assignment of the other note and mortgage (Carroll) (pending the payment by the defendants of the purchase price of the tracts bought by them), as collateral security for the advance of $3,900 made by him.

Thereafter, on March 30th, the purchasers paid to Mr. Gaston the amounts due by them, and on March 31st he executed a satisfaction piece of the Love mortgage in question, and transmitted it to the Clerk of Court of York

County, where it, together with the assignment from Mr. Brice to Mr. Gaston, was entered upon the record of the mortgage, on *April 4, 1923*. (The assignment from Mr. Brice to Mrs. Neely was never recorded; the law at that time did not require such record.)

The deed from the adult heirs to the defendants was dated February 21, 1923, and that from the Clerk of Court of Chester County, conveying the interests of the minor heirs at law, March 30, 1923. As the checks from the purchasers are dated March 30, 1923, it may be assumed that these deeds were not delivered until that day. They appear, by reference to the book and pages, to have been recorded at the same time; the date does not appear in the record for appeal.

The proceeds of the draft were passed to the credit of Mr. Brice, and were expended by him upon his personal account; no part of them has reached the plaintiff, except perhaps in a payment made by Mr. Brice to Mrs. Neely, as interest upon her $1,200, $288.92, on April 10, 1923, more than six weeks after he had received the full amount of principal and interest in the paid draft of $3,900.

This is a hard case. It involves a severe loss upon either the plaintiff or the defendants, as it may be decided. Both are perfectly innocent of wrongdoing. It presents the most embarrassing of all questions which a Court is required to face. One or the other must lose; which one? In my opinion, that issue is to be determined by the answer to the question, which was the more to blame in furthering the misappropriation of the money by Mr. Brice.

The evidence, in my opinion, establishes in Mrs. Neely's favor the following facts: On December 24, 1919, she transmitted to Mr. Brice, her attorney in matters of loans and investments, a check for $1,200, to be invested by him for her. On the same day Mr. Brice invested that sum of money in a mortgage which he had taken on December 22d, two days before, from F. P. Love, by assigning to Mrs.

Neely $1,200 of the $2,000 represented by the note and mortgage. Mrs. Neely never from that day to this reassigned her interest in that mortgage to Mr. Brice. The mortgage never left the hands of Mr. Brice until he forwarded it with the draft. The note was delivered to Mrs. Neely. It was redelivered by her son to Mr. Brice for the purpose of collecting the past-due interest. In order to carry out his purpose to appropriate the whole of the proceeds of the mortgage to his own use, Mr. Brice, without authority from Mrs. Neely, canceled the assignment from himself to Mrs. Neely, of a part of the mortgage debt, assigned the whole of the mortgage to Mr. Gaston, drew a draft on him for that amount, collected the proceeds, and failed to account to Mrs. Neely.

In favor of the defendants, it establishes the facts that they have paid full value for the tracts of land purchased by them; that they had no *actual* notice of the conduct of Mr. Brice in connection with the assignment of the note and mortgage to Mr. Gaston.

Considering, then, the conduct of Mrs. Neely, in comparison with that of the defendants, in determining the issue which was the more to blame in connection with the failure to account for the money by Brice:

Mrs. Neely had acquired a valid interest in the note and mortgage, assigned to her by Mr. Brice, to the extent of $1,200, and is entitled to recover it, unless it be shown that she has parted therewith, or has so acted as to estop her from asserting her claim.

At the time of the execution by Mr. Brice of the assignment to Mrs. Neely, there was no law requiring such assignments to be recorded. It is, of course, not affected by the Act of 1924 (33 Stat., p. 928), requiring assignments to be recorded, which by its terms did not go into effect until July 1, 1924, nearly five years later.

The following quotation from 1 Jones, Mtg. (6th Ed.) § 956, is approved by this Court in the case of *Wilson v. Brabham,* 126 S. C., 273; 119 S. E., 829:

"There can be no question that utility and convenience demand that the registry laws should cover assignments of mortgages as well as other conveyances. But the protection secured by registration is wholly the creation of statute, and if the statute does not require an assignee to record his assignment, he is not guilty of negligence on failing to do so."

It is contended that the culpability of Mrs. Neely consisted in any one or all of the following charges: (a) That Brice was her agent for the purpose of collecting the amount of both principal and interest due to her on the mortgage; (b) that, if not her agent therefor, she allowed him to hold himself out as her agent for that purpose; (c) that, by filing a claim against the estate of Brice, after his death, she ratified his act in receiving for her the amount due to her out of the mortgage collection.

(a) As to the first charge: *That Brice was Mrs. Neely's agent for the purpose of collecting the amount of both principal and interest due to her on the mortgage.*

This question is summarily disposed of by the statement: "The Special Referee held that Mr. Brice was the agent of the plaintiff, and that holding was concurred in by the Circuit Judge. The facts are fully sufficient to sustain this holding."

The Constitution provides (Article 5, § 4):

"The Supreme Court * * * shall have appellate jurisdiction only in cases of chancery, *and in such appeals they shall review the findings of fact as well as the law.* * * *"

As I understand the Constitution, it means that in that review the only burden which the appellant carries is the burden of every appellant to show that error was committed in the judgment at law or decree in equity appealed from, absolutely uninfluenced by the holding of the Court below

to any other than this extent; it is not an *appeal,* otherwise. In an action at law, when only questions of law are reviewable, this Court is not influenced by the opinion of the Court below. In an action in equity when questions of fact and of law are reviewable, this Court is not influenced by the opinion of the Court below on a question of law. Why should it be on a question of fact?

From a review of the facts of this case, I do not think that there is a particle of evidence tending to show that the note (the mortgage was retained by Mr. Brice), was delivered to Mr. Brice by Mrs. Neely, or her agent, John A. Neely, for the purpose of collecting the *principal* of what was due to her under Brice's partial assignment; that, on the contrary, the evidence is overwhelming that the note was delivered to Brice by John A. Neely for the specific purpose *alone* of collecting the past-due interest.

The testimony of John A. Neely is clear to the effect that the note was delivered to Mr. Brice for collection of the past-due interest and to enable him to prepare a new set of papers carrying out an agreement on the part of the sons of F. P. Love to buy the land and assume the mortgage.

The proved circumstances in the case conclusively show to my mind that the note was delivered by Neely to Mr. Brice for the purpose of enforcing the collection of the past-due interest upon the $1,200 of the note and mortgage owned by Mrs. Neely.

It does not appear that Mrs. Neely was at that time in need of money. She had other funds in the care of Mr. Brice, no part of which was she calling for, beyond the interest. This view is strengthened by the circumstances that in April, 1923, after Mr. Brice had collected the whole amount due to Mrs. Neely, principal and interest, as will be later shown, he remitted to her a check for $288.92, expressed to be the interest on the $1,200 from December 24, 1919, at 7 per cent. annual interest; and at that time it does not appear that Mrs. Neely made any objection to his not

having collected the principal as well as the interest; and no explanation of his failure to do so appears to have been offered by Mr. Brice.   If the note had been placed in the hands of Mr. Brice, *for collection,* on December 28, 1922, it is strange that Mrs. Neely, in April, 1923, should have accepted the interest only, without complaint.

The further fact is significant:   John A. Neely had delivered the note to Mr. Brice on December 28, 1922.   A little more than a month later, on February 3, 1923. Mr. Brice, who it is claimed had received the note *for collection* of both principal and interest, wrote to F. T. Love, a son of the mortgagor, F. P. Love, who had died May 17, 1922, threatening a foreclosure of the mortgage against the heirs at law, "unless I can get the money, *or enough money to pay the interest on the $2,000.   * * *   Now, if you all can get up the money *to pay the interest on the $2,000* since it was given,   * * *   *I can let it go over until fall."*

I think, therefore, that it is perfectly clear that Mrs. Neely and John A. Neely were interested only in the payment of the past-due interest, and that the note was delivered to Mr. Brice for the purpose only of collecting that interest.

I attach no weight to the testimony of John A. Neely that there was an arrangement on foot by which the sons of F. P. Love were to buy the land and assume the debt by the execution of new papers, and that Mr. Brice needed the papers for that purpose.   I do not discredit his statement at all, and have no doubt, in view of what transpired later, that his information emanated from the source of subsequent disasters.

The defendants attempt to sustain their contention that the note was delivered to Brice for the purpose of having him collect both principal and interest by the testimony of Col. W. W. Lewis, an honored member of the York bar, now deceased, who detailed a conversation had by him with John A. Neely, after the death of Mr. Brice, when Col. Lewis was interested in the administration of his estate, from

which it sought to establish the fact that Neely had stated that the Love *paper* had been delivered to Mr. Brice *for collection*. His testimony is not at all definite, and is by no means sufficient to satisfy me that Neely made such a statement, if, indeed, his statement be any evidence of the fact that the note was delivered to Mr. Brice for collection. The statement of Col. Lewis is the only evidence in the case of the fact sought to be established, and in my opinion it amounts to no evidence at all.

But assume that the Special Referee and the Circuit Judge were correct in sustaining the defendants' contention that the note was delivered for the purpose of the collection of the principal as well as the interest, what do we find? We find that Brice did not collect the note and mortgage, but executed an absolute assignment of both to A. L. Gaston, Esq., and that, in order to effect that assignment, he canceled the assignment which he had previously executed to Mrs. Neely, so that it might appear that he was the owner of the entire interest, in the face of Mr. Gaston's request that the assignment be executed *"by your clients,"* an instruction which fixes upon Mr. Gaston notice that others than Mr. Brice owned the mortgage.

It hardly needs authority for the proposition, that an attorney's power to collect does not confer, by implication, the power to assign a client's security.

In *Annely v. DeSaussure,* 12 S. C., 488, it is said at page 509:

"The relation of attorney and client implies authority to enforce the demands of his client, of obtaining either voluntary or coercive satisfaction of such demands, and to bind the client as a party litigant in certain matters appertaining to the conduct of causes; but it does not confer a general power of attorney to contract independently in relation to such demands, *nor to transfer such demands to a third party."*

In 3 A. & E. Enc. L., 369, it is said:

"An attorney in whose hands a note or other obligation has been placed for collection has no power to transfer it to another, either for a consideration for his client's benefit or for collection." Mechem, Agency, 813; 2 Green. Ev., § 141. *Penniman v. Patchin,* 5 Vt., 346. *Benedict v. Smith,* 10 Paige (N. Y.), 126. *Smock v. Dade,* 5 Rand. (Va.), 639; 16 Am. Dec., 780. *Wilson v. Wadliegh,* 36 Me., 496. *Chapman v. Cowles,* 41 Ala., 103; 91 Am. Dec., 508. *Wadhams v. Gay,* 73 Ill., 426. *McClintock v. Helberg,* 168 Ill., 384; 48 N. E., 145. *Schroeder v. Wolf,* 227 Ill., 133; 81 N. E., 13.

The reason of the rule is that an assignment carries with it certain guaranties on the part of the assignor which do not exist in case of payment. One may be willing that a payment be made and entirely unwilling to assume these obligations.

Certainly it gave Brice no power as attorney, without authority from Mrs. Neely, and for the purpose of getting into his hands the whole amount of the mortgage, which he appropriated to his own use, to perpetrate, in legal contemplation, a *forgery.* He might as well have forged Mrs. Neely's name to a reassignment of the $1,200 interest in the mortgage or forged a receipt from her acknowledging that she had been repaid the $1,200. This is in effect what he represented to Mr. Gaston in the cancellation of the assignment; a restoration of the original status.

(b) As to the second charge: *That, if Brice was not Mrs. Neely's agent for the purpose of collecting the amount of both principal and interest due to her on the mortgage, she allowed him to hold himself out as her agent for that purpose.*

In what way Mrs. Neely allowed Brice to hold himself out as her agent to collect the amount due to her on the mortgage I am unable to discover from the evidence; and it has

not been pointed out by any of the judicial utterances in the case.

One circumstance, and one only, is adverted to as evidence of this fact; namely, that Brice was in possession of the note and mortgage. It appears to have been overlooked that Brice had an interest amounting to $800 in the note and mortgage, after he had assigned $1,200 of the debt to Mrs. Neely, which gave him as much right to the possession of the papers as Mrs. Neely had, and is referable to his interest in them.

The transactions of Brice afford not the slightest evidence that he was holding himself out as Mrs. Neely's agent. He was acting throughout in his own personal interest, the very opposite of agency.

It certainly did not occur to Mr. Gaston that Mr. Brice was holding himself out as the agent of Mrs. Neely to collect the amount due to her in the mortgage. He was the helmsman in the transaction, and, if any such notice reached any one, it must have been Mr. Gaston; and yet the evidence shows that, as the note and mortgage had been executed to "J. S. Brice, attorney," Mr. Gaston was notified of the fact that Mr. Brice was merely a conduit, as is shown by his instructions to Mr. Brice to have the papers assigned *"by your clients."* If Mr. Brice had followed those instructions, there would have been no trouble. Mrs. Neely would have been on the alert to have a settlement with Mr. Brice, and not lulled into security by the payment of the past-due interest, six weeks after Mr. Brice had received the whole, or, if Mr. Gaston had been in Chester when the draft was presented, the trouble would not have occurred—showing that the loss was not sustained by any *holding out* process chargeable to Mrs. Neely.

(c) As to the third charge: *That, by filing a claim against the estate of Brice after his death, Mrs. Neely ratified his act in receiving for her the amount due to her out of the mortgage collection.*

In the first place, I have been unable to find either in the Special Referee's report or in the Circuit decree any suggestion of such a finding, nor a proposition on the part of the respondents to sustain the decree upon this additional ground. I do not think, therefore, that the point is properly before this Court.

Moreover, it is entirely inconsistent with, and is not claimed in, the answer. The contention of the defendants is that the money was received by Brice *as the agent* of Mrs. Neely; and it is well settled that ratification is inconsistent with the theory of agency. "An instruction that ratification of an agent's acts only applies to acts beyond the scope of his agency was proper." *Sparkman v. Supreme Council,* 57 S. C., 16; 35 S. E., 391.

However, I will discuss the proposition.

The evidence shows that, after the death of Brice, and after John A. Neely learned of the receipt by Brice of the $1,200 which belonged to his mother, John A. Neely filed a claim (I will assume as agent for his mother) against the administrator of the estate of Brice for the amount so received by him. It is declared that "such conduct on the part of the mortgagee was evidence of ratification of the agency to collect the money," and the cases of *Miles v. Gadsden,* 139 S. C., 52; 137 S. E., 204 and *Miles v. Felkel,* 139 S. C., 95; 137 S. E., 329, are cited in support of such declaration.

Beyond the following statement in the report of the Master in the *Gadsden case,* there is no reference either in that report or in the Circuit Decree, or in the opinion of this Court, or in the *Felkel case,* upon the subject:

"I am of the opinion * * * that the filing of the claim by the plaintiff's agent was a ratification of the payment by Gadsden [the mortgagor] to Kroeg [the attorney], for the account of Doscher [the mortgagee], as a credit on the mortgage debt."

The proposition received such scant attention in both of the cases cited, and in my opinion is so opposed to reason and justice, and to the decided cases everywhere, that I make bold to express my opinion upon it.

Of course, if it be conceded that Brice was the agent of Mrs. Neely to receive both principal and interest, all question of ratification passes out of the discussion; for, if so, the payment to him was payment to her. The question can arise only in cases where the agent received money for his principal which he was not authorized to receive. It is therefore necessarily assumed in this discussion that Brice was without authority to receive the portion of the mortgage debt which belonged to Mrs. Neely.

The primal, and I think a conclusive, barrier to the application of the doctrine of ratification in this case is that in Brice's transaction, culminating in his personal receipt of the money, made possible by his cancellation of the assignment from himself to Mrs. Neely, his personal assignment to Mr. Gaston and his draft upon him, *Brice did not assume to act as the agent of Mrs. Neely.* He not only did not profess to act as agent for Mrs. Neely, but he studiously presented the evidence that he was acting for himself by committing a forgery upon the rights of Mrs. Neely in canceling the assignment from himself to her. The authorities are overwhelming upon the proposition.

" * * * It is a rule, that an act, to be capable of ratification, must be done professedly on behalf of the quasi principal, by one who assumes to act as his agent. * * * Ordinarily, where one man acts for another, he must act for him professedly, or else the act will purport to be his own act and not the act of him for whom he is secretly acting." Tiffany, Agency, § 47. "No act performed by one man can be adopted by another on his behalf. In other words, an act to be capable of ratification, must as a rule, be done by one who assumes openly to act as agent." Id., § 48.

The author cites the case of *Wilson v. Tumman,* 6 M. & G., 236, in which the Court said:

"That an act done for another, by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him, is the known and well established rule of law. * * * Such was the precise distinction taken in the Year Book, 7 Hen. IV, folio 35, that if the bailiff took the heriot (a feudal tribute), *claiming property in it himself,* the subsequent agreement of the lord would not amount to a ratification of his authority as bailiff at the time; but if he took it, at the time, as bailiff of the lord, the subsequent ratification by the lord made him bailiff at the time."

The author adds:

"Accordingly if A enters into a contract with C, openly assuming to act as the agent of B, B may ratify it; but if A enters into a contract in his own name with C, B cannot claim the benefit of it by subsequent ratification, nor can A divest himself of his liability towards C by procuring a ratification from B. *It follows that a contract cannot be ratified by an undisclosed principal.*"

Mr. Mechem says in his work on Agency (2d Ed.), § 386:

"Since the effect of ratification is to confirm the act as done, it is *indispensable,* in order to have an act of agency, that the act ratified must have been done by the assumed agent as agent in behalf of a principal. If the act was done by him as principal, and on his own account, or on account of some third person, it cannot be thus ratified."

Further:

"And not only must the assumed agent have *intended* to act as agent for the person ratifying, but as declared by the House of Lords after most elaborate consideration, and according to the weight of authority in the United States, he must have *professed* to act for a principal, though it is not

necessary that he should have disclosed who that principal was, if he was capable of identification within the rule already laid down.   As stated by Lord Roberson:

" 'Whether the unauthorized agent be marked out as an agent by what he says, or what he wears, is of course a mere matter of circumstance and evidence; *but as an agent he must be known to be and as agent he must act.' "*

And again:

"What the prevailing rule amounts to, when reduced to its lowest terms, is that the act or contract to be ratified shall purport to have been done or made, not merely on the agent's behalf but by the agent, in the name and on the account of the alleged principal, so that, when ratified, as it was done or made, it shall be capable of being enforced by and against the principal as an act or contract to which he was a party.  *The rule makes impossible a ratification by an undisclosed principal.  * * * "*

In a note to Section 386, the author cites 50 cases from the "four winds," sustaining the proposition, and perhaps 50 more may be found in Century Digest, Principal and Agent, Key No. 622, and the Decennial and Annual Digests under the same title, Key No. 164.

"The difficulty is that the doctrine of ratification is not applicable to a case where the person who makes the contract was not at the time, and did not profess or assume to be, acting on behalf of a principal." *Schlesinger v. Forest Produce Co.,* 78 N. J. Law, 637; 76 A., 1024; 30 L. R. A. (N. S.), 347; 138 Am. St. Rep., 627.  *Brown v. Myers,* 89 N. J. Law, 247; 98 A., 310.

In *Hopkins v. Smathers,* 114 S. C., 488; 104 S. E., 30, the Court said:

"Plaintiff's transactions show he dealt with Rhodes as if he were owner, and not agent of another, and, when he did not get the car, then attempted to make Rhodes agent for Smathers."

Exactly the situation in the case at bar: Mr. Gaston relied absolutely upon the assignment by Brice, not professing to act as agent for Mrs. Neely, but positively denying her interest in the mortgage by canceling his own assignment to her.

Another barrier is that the doctrine of ratification is assimilated to that of election of remedies, and that doctrine is not applicable except in cases *where suit has been instituted.* The presentation of a claim is not considered evidence of an election.

"The general theory of the doctrine is that of election of remedies—that a man cannot have two inconsistent remedies, and that, having elected one, he must stand by his choice. The doctrine does not rest on the theory of estoppel. * * *" Note, L. R. A., 1917-D, 704.

In *Butler v. Hildreth*, 5 Metc. (Mass.), 49, quoted with approval in *Robb v. Vos,* 155 U. S., 13; 15 S. Ct., 4; 39 L. Ed., 52, the Court said:

"It would, we think, be going too far to say, that merely demand of the price should be deemed a waiver of his right to avoid the sale, and claim the goods; because, in many cases, if the price could be obtained, it would be equally beneficial to the creditors, and he would have no further occasion to pursue the harsher remedy of impeaching the sale. But we think that if the assignee *commences an action* against the purchaser for the price, and causes his property to be attached to secure it, this is a significant act, an unequivocal assertion that he does not impeach the sale, but by necessary implication affirms it."

So in the case at bar: Mrs. Neely did nothing more than present a claim against the administrator of Brice for money belonging to her which he had unlawfully received and failed to account for. If she could have received the full amount misappropriated by Brice, the defendants would have profited by the filing of the claim. I do not see that they have any right to complain of an act of Mrs. Neely, which,

if successful, would have relieved them from the "harsh remedy" which Mrs. Neely was forced to take.

It might as well be said that, if Brice had been living when Mrs. Neely discovered that he had collected her part of the mortgage, Mrs. Neely could not have asked him for it without waiving her right to proceed against the mortgagor in foreclosure. The filing of a claim against the administrator of Brice, deceased, is no nearer a suit than the demand upon Brice, living, would have been.

Another barrier to the application of the doctrine of ratification is the utter absence of evidence that Mrs. Neely, in filing the claim, had the slightest intention of waiving her right of foreclosure against the mortgagor.

"Generally speaking, a ratification may be implied from any acts, words, or conduct on the part of the principal which reasonably tend to show an intention on the part of the principal to ratify the unauthorized acts or transactions of the alleged agent, provided the principal in doing the acts relied on as a ratification acted with knowledge of the material facts." 2 C. J., 489.

"Ratification is a matter of intention, express or implied, on the part of the principal, and, in order to establish an implied ratification, there must be some acts or conduct on his part which reasonably tends to show such intention." 2 C. J., 492.

In 2 C. J., 513, it is said:

"Where a principal with knowledge of the facts claims and seeks to enforce by such, *rights based upon the unauthorized acts or contract of an agent,* or other person acting in behalf of the principal * * * he thereby impliedly ratifies such act or contract."

And at page 515 the corollary is thus stated:

*"Where the action is not based upon the contract made by the agent,* the principal may, *without ratification,* maintain an action to protect his rights. * * *"

*A fortiori* should be allowed to maintain an action to protect the interests of the third party as well as his own.

"Intention, express or implied, to ratify an unauthorized act is a material factor in an inquiry of ratification *vel non* by an asserted principal; and the intent requisite may be inferred where there is evidence tending to show that the asserted principal, with adequate knowledge of the facts and circumstances, so conducted himself as to evince his purpose to confirm or adopt the unauthorized act of another." *Birmingham News Co. v. Birmingham Printing Co.,* 209 Ala., 403; 96 So., 336.

"The question as to whether the act of an alleged principal is a ratification of a supposed agency depends upon his intention, and, when the act relied on to show ratification is equally consistent with a purpose to the contrary, an intent to ratify is not ordinarily implied." *Culver v. Nichols,* 140 Md., 448; 117 A., 873.

It was the most natural thing in the world for Mrs. Neely, after the discovery of Brice's collection and misappropriation, which was not done until after his death, for her own protection and that of the mortgagor, to make demand upon Brice's administrator for the money. For all that she knew to the contrary, Brice may have left the money in shape to be turned over to her or had given directions to that end. If he had been alive, it would have been the natural and the *proper* thing for her to have done.

I am inclined to think that, if Brice had *avowed his agency,* was acting for Mrs. Neely in collecting the money, and Mrs. Neely had *brought suit* against him for it, she would be held to have ratified his act. See an interesting and able opinion of Justice Riddick of the Arkansas Supreme Court in the case of *Wood v. Claiborne,* 82 Ark., 514; 102 S. W., 219; 11 L. R. A. (N. S.), 913; 118 Am. St Rep., 89.

In the case at bar he not only did not avow his agency, but *concealed it,* and Mrs. Neely has never *brought suit.*

If she had brought suit, *under the circumstances of this case,* her act could not have amounted to ratification, for the reason that Brice throughout was acting for himself, and not as her agent. She would have had the right to sue him for money had and received, repudiating the idea that he was acting as her agent. In that event she would have been suing Brice upon *his* promise, implied by law, to pay her the money he had unlawfully collected.

In *Peay v. Aiken,* 1 Strob., 103, the Court said:

"* * * In an action for money had and received, the possession of the plaintiff's money is considered enough to support the implied promise."

"Both at common law and under the Code, money paid under fraudulent misrepresentations may be recovered on the common count for money had and received." *Winkler v. Jerrue,* 20 Cal. App., 555; 129 P., 804.

"If one wrongfully obtains the money of another, he may waive his damages and sue for money had and received." *Rhodes v. Jenkins,* 2 Ga. App., 475; 58 S. E., 897.

In *Madden v. Watts,* 59 S. C., 81; 37 S. E., 209, the Court holds:

"But it is insisted that there is no privity between the plaintiff * * * and the respondent respecting the transaction. It is well settled that an action for money had and received lies against any one who has money in his hands, which he is not entitled to hold as against the plaintiff, and want of privity between the parties is no obstacle to the action."

This is a quotation from the case of *Soderberg v. King's County,* 15 Wash., 194; 45 P., 785; 33 L. R. A., 670; 55 Am. St. Rep., 878, and the Court also quotes the following from *Bayne v. U. S.,* 93 U. S., 642; 23 L. Ed., 997:

"Assumpsit will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund."

Also *State v. St. Johnsbury,* 59 Vt., 332; 10 A., 531. See, also, *Luther v. Wheeler,* 73 S. C., 83; 52 S. E., 874; 4 L. R. A. (N. S.), 746; 6 Ann. Cas., 754. *Buchanan v. Buchanan,* 4 Strob., 63.

In *Marvin v. McRae,* Rice, 171, the Court said:

"The general principle to be found in all the cases is, that if A has money in his hands which belongs to B, B may sue him in this form of action."

In *O'Neall v. McBride,* 4 Rich., 343, the plaintiff sued in trover, and recovered a verdict of $800.00. In the meantime, the defendant had wrongfully disposed of the subject of the action, and had deposited the proceeds of sale with the sheriff as representing the property. The Court held that, notwithstanding the fact that the plaintiff had pursued the defendant to judgment in trover, he had the right to recover the proceeds of sale as money had and received.

The question whether a principal by filing a claim or suit against his agent, upon an unauthorized transaction by the agent, has ratified the transaction, depends upon whether the action of the principal may be construed into a recognition of the validity of the transaction. As Mr. Tiffany expresses it, in his work on Agency:

"Bringing suit *predicated upon the validity of the unauthorized transaction* amounts to ratification."

For instance, if an agent should make an unauthorized sale and accept a note for the purchase price, and the principal should sue the maker upon the note, his action in so doing would necessarily be construed into a recognition of the validity of the sale; he cannot accept the benefit of a transaction and then repudiate it.

But, where the action of the principal is based upon a repudiation of the validity of the transaction, and is for the recovery of the *money had and received* by the agent, the principal is simply taking advantage of one or the other of the sources from which he may recover his money.

As in the case at bar: Brice in an unauthorized manner received money which belonged to Mrs. Neely. She did not present the claim in recognition of his right to receive it; exactly the contrary.

In *Drake v. Whaley,* 35 S. C., 191; 14 S. E., 397, the Court quotes with approval, and with the italics indicated, the following from *Hall v. Marston,* 17 Mass., 575:

"The principle of this doctrine is reasonable and consistent with the character of the action of assumpsit for money had and received. There are many cases in which that action is supported *without any privy between the parties other than What is created by law.* Whenever one man has in his hands the money of another which he ought to pay over, he is liable in this action, although he has never seen or heard of the person who has the right. When this fact is proved, that he has the money, if he cannot show that he has legal or equitable ground for retaining it, the law creates the privity and the promise."

Mrs. Neely knew nothing of the misconduct of Brice until after his death. In fact, he was careful to conceal from her the knowledge of his misappropriation, and deliberately lulled her into a sense of security by paying her the past-due interest a short while after he had received the full amount of principal and interest.

"Where an agent receipts for a suit of clothes in payment of a bill due his principal, the latter does not ratify the collection of the bill in that manner by seeking to recover the money of his agent." *Holland v. Johnson,* 38 Misc. Rep., 187; 77 N. Y. S., 247.

In *Crute v. Burch,* 154 Mo. App., 480; 135 S. W., 1004, the owner of a mare and mule colt directed his agent to sell the mare for $60.00. The agent sold both mare and colt for $115.00, and accounted to his principal for only $60.00. The purchaser of the colt sold it to the defendant. The owner valued the colt at $60.00, and endeavored, through an attorney, to collect that amount from the agent. He then

brought replevin against the vendee of the purchaser from the agent for the colt. The Court disposed of the contention of the defendant as follows:

"And it is further contended that plaintiff, by entering into negotiations with [agent] for collection of the price of the mule, he ratified the contract of sale. This position is equally as untenable as the first. He did not agree to take [the agent] as paymaster for the price of the mule, but was willing that he should pay for it. Surely it cannot be said this can be construed as an affirmance of the theft of the mule. Had he accepted from [the agent] the price of the mule, or had he agreed to look to him for its payment, that would have been an affirmance of the sale."

In *Barnsdall v. O'Day* (C. C. A.), 134 F., 828, it was held, quoting syllabus:

"The bringing of an action by a principal against his agent in the purchase of lands for the amount of a commission secretly paid him by the vendor does not operate to ratify the contract, so as to discharge the vendor from liability in damages for fraud and deceit, by which, with the assistance of the agent, the sale was induced."

In 31 Cyc., 1282, it is said:

"A suit against the agent for moneys wrongfully received is not necessarily a ratification, as to third persons, of the agent's unauthorized contract."

In *Bank of St. Mary's v. Calder,* 3 Strob., 403, it was held that, where money has been wrongfully lent by the agent without taking sufficient security, an action in assumpsit by the principal against the borrower to recover the money lent is not an approval of the security taken, and will not relieve the agent from liability.

In *Brown v. Foster,* 137 Mich., 35; 100 N. W., 167, it was held (adopting as the substance of that decision what is declared in 31 Cyc., 1282):

"Where an agent makes an unauthorized sale and delivery of property amounting to a conversion, the owner may, with-

out ratifying the sale as made, waive the tort and sue the agent on the common counts in assumpsit to recover the value of the property."

The distinction which I am endeavoring to draw is illustrated by an Alabama case. *Newman v. Morgan,* 202 Ala., 606; 81 So., 548. In that case the plaintiff authorized his agent to settle a claim against a railroad company, which he accomplished for $1,250.00. The plaintiff sued the agent for $1,250.00, and, upon the trial, denied that he had authorized or accepted the terms of the settlement. The Court held that the issue as to this fact was negligible, as the plaintiff by that suit had ratified the settlement. There the ratification was based upon recognition of a contract, not as here, upon practically a claim for money had and received.

II. Considering next the conduct of the defendants, in comparison with that of the plaintiff, in determining the issue which was more to blame in connection with the embezzlement of the money by Brice:

I assume, as has been stated, that the defendants paid full value for the tracts of land purchased by them, and that they had no *actual* notice of the fraudulent conduct of Brice in connection with the assignment of the note and mortgage to Mr. Gaston.

But there are circumstances connected with the transaction which, in my opinion, should have put the defendants, or those who were acting for them, upon an inquiry which would have developed the true status of affairs.

In the case of *Wilson v. Brabham,* 126 S. C., 273; 119 S. E., 829, the bank held a mortgage upon certain land. It assigned the note and mortgage to the plaintiff who did not record the assignment. Thereafter the mortgagor applied for a loan from a third person. The third person, through her attorney, had the titles examined and found open the bank's mortgage. Upon application to the mortgagor, it was stated that the bank's mortgage had been paid. The mortgage could not be produced. The attorney for the

third person then obtained from the bank a formal satisfaction of the mortgage which was duly entered (which, of course, having assigned the mortgage to the plaintiff, it had no right to give). The third person then advanced to the mortgagor and took notes and mortgages upon the property as security. In a contest, then, between the plaintiff, assignee of the bank mortgage, and the third person who relied · upon the satisfaction executed by the bank, wrongfully, the Court held that, as the plaintiff was under no obligation to record his assignment, and as the attorney for the third person accepted the statement of the mortgagor and the satisfaction by the bank of the assigned mortgage, for which the plaintiff was not responsible, the third person's mortgages must be subordinated to that of the plaintiff. The Circuit Decree, which was affirmed, states:

"The plaintiff purchaser was not required by law to record the assignment to him. The borrower (lender?), afterwards finding an open mortgage to the bank, was not complying with the law in taking a satisfaction on a separate sheet of paper *and without proof that the bank was the proper one from whom to get a satisfaction; because the law requires that the satisfaction must be from the holder and owner of the instrument.*" (Italics added.)

It is settled, therefore, I think, that Mrs. Neely was under no legal obligation to have her assignment recorded, and that the defendants, purchasers, were under a legal obligation to see that the satisfaction of the mortgage, to the extent owned by Mrs. Neely, was properly made by her.

It was held in the *Wilson v. Brabham case,* that the conduct of the third person's attorney who accepted the statement of the mortgagor that the bank mortgage had been paid, and the satisfaction by the bank of its mortgage, which had been assigned to the plaintiff, contributed to the loss sustained by the third person who advanced upon what turned out to be the second and third mortgages.

In the case at bar, the defendants did not attempt to pursue, on their own account, the slightest independent investigation to ascertain whether the "holder and owner" of the mortgage (in this instance, of a part of it) was the one who was to receive the payments which they were about to make, which, of course, depended upon the validity of the assignment from Mr. Brice to Mr. Gaston. They relied implicity upon the assurance of Mr. Gaston that the title was clear, or would be clear as soon as he received their money and entered satisfaction of the mortgage upon the record.

I accept, without reservation, the statement of Mr. Gaston that he was, in these transactions, acting as attorney for the heirs of the mortgagor and agents for them in clearing the title and having the deeds properly executed; but I think that the facts show that, in addition thereto, he was acting, in this particular matter, also as an intermediary between the purchasers and the mortgagee, to see that the mortgage was properly satisfied with the money paid to him by the purchasers. He was to receive an assignment of the mortgage to himself, personally; to pay the draft; to hold the mortgage as security for his advance; to receive from the purchasers the money for the land; to apply it to his account at the bank; and to enter satisfaction upon the record of the mortgage—all of which he faithfully performed, and saw that the deeds from the adult heirs at law and from the clerk, covering the interests of the minors, were delivered to the purchasers. The purchasers, therefore, attempted to do through him what the law required them to do, to see that "the satisfaction must be (was) from *the holder and owner of the instrument.*"

The purchasers were under this legal obligation, and, if they saw fit to rely upon Mr. Gaston's investigation and conduct, they are bound by the notice which he had of facts sufficient to put him upon inquiry.

It will be kept in mind that I am endeavoring to compare the conduct of the parties respectively to this suit, in an

effort to determine which was the more culpable, and in doing so it becomes necessary to review the diligence of Mr. Gaston in the matter, who assumed and was so permitted by the defendants to perform the duty which the law imposed upon them. (I may interpolate here that nothing that I may say is intended to reflect in the slightest degree upon him, whom I regard as a courtly gentleman of the highest character and a lawyer of exceptional ability. He did what many a lawyer, considering the reputation of Mr. Brice and all the circumstances, would probably have done.) The keystone of his investigation was *the validity of the assignment from Brice to him.*

In the first place, the mortgage was to "J. S. Brice, Attorney," which should have notified him that Mr. Brice was a conduit merely acting in a representative capacity, a trustee for some one else. His first letter to Mr. Brice shows a "watchful recognition of his plight." He writes, "will thank you to have these mortgages assigned to me personally, without recourse, *by your clients.*" The assignment was made by "J. S. Brice, Attorney," *not by his clients.*

In the next place, the note showed upon its back that at one time, at least $1,200.00 of it had been assigned to Mrs. Neely. This assignment had been canceled, and the evidence is conclusive that it had been canceled by Mr. Brice at the time of the transmission of the draft with the note and mortgage, without authority from Mrs. Neely. Did that not call for an inquiry as to the validity of the cancellation? Of course, Mr. Gaston could not have known that Mr. Brice had canceled the assignment and had done so without authority; but the paper came from Mr. Brice. Mr. Brice had assigned $1,200.00 of it to Mrs. Neely. If Mr. Brice had become revested with the whole of the mortgage, would there not reasonably have been a reassignment by Mrs. Neely underneath the original assignment? There is no question but that with this notice, if inquiry had been made of Mr. Brice, or (I may say, *and*) Mrs. Neely, the fact would have

been developed that Mr. Brice had no right to cancel the assignment, and that the $1,200.00 still belonged to Mrs. Neely. One who has notice of facts reasonably calculated to put him upon inquiry is charged with knowledge of the facts which such inquiry would develop.

The case for the defendants is based upon the supposed fact that Mr. Brice was authorized to collect the whole of the principal and interest due to Mrs. Neely; and that the cancellation of the assignment and the execution of the assignment to Mr. Gaston were but convenient and legitimate means to effect the collection. If he canceled the assignment to Mrs. Neely without authority, and appropriated the money collected, the offense under the criminal law would have been a serious one. That he did cancel it without authority is demonstrated beyond a doubt by the evidence, and I regret to say that the evidence of his appropriation is equally clear. I have endeavored to show that there is not a particle of evidence tending to sustain the contention that the note was delivered to Mr. Brice for collection of the principal.

It has been suggested that it is not an unusual thing for one to deposit a security as collateral to a note; assign it; pay the note and erase or cancel the assignment; and that Mr. Gaston had the right to assume that that course had been adopted in this case. That may be true, but in this case there is nothing upon the face of the paper that shows that Mr. Brice owed Mrs. Neely $1,200, or that the assignment was as collateral. It shows an absolute assignment, and the evidence shows an absolute assignment. There is nothing to justify the cancellation, and all to show the necessity of an inquiry. *What does this mean?*

I am strongly inclined to think that, if Mr. Gaston had been in Chester when the draft was presented, and not in Florida, the irregularity and disobedience of instructions would have been discovered and corrected.

III. I see no room in the case for the application of the rule of *bona fide* purchaser for value without notice. That might apply under the Act of 1924, which provides for the recording of assignments of mortgages, but not to a case prior to that Act, where, under the case of *Wilson v. Brabham,* the duty of a subsequent purchaser or incumbrancer is to see that the satisfaction of the mortgage is made by the holder and owner.

The Special Referee finds:

"The notice from the records in the Clerk's and Register's office, therefore, was that J. S. Brice, attorney, who had been the legal owner and holder of the F. P. Love mortgage, had assigned the same for value to A. L. Gaston, Esq., and that it had been paid by (to?) the latter and extinguished; *and this is all the notice that is imputable to the defendants Love and Hargett."*

Unfortunately for this statement, it appears that the payments by the defendants were made on *March 30, 1923;* that the deeds were delivered then; and that Mr. Gaston's satisfaction, with the assignment, was executed on *March 31,* and not recorded until *April 4th.*

The same inadvertent statement occurs in the decree of his Honor, Judge Featherstone:

"As stated above, when they purchased the land, there was on record this mortgage in the name of J. S. Brice, attorney. There was an assignment by J. S. Brice, attorney, to A. L. Gaston. There was a satisfaction by A. L. Gaston. *The record was perfectly clear."*

The record was *not* clear when the purchasers paid their money and accepted delivery of their deeds. It did not become *apparently* clear until the assignment from Mr. Brice to Mr. Gaston and the satisfaction of the mortgage were recorded on *April 4th.*

IV. The issue here may be solved by considering the result, if instead of the indirect handling of the matter, Mr. Brice had drawn a draft upon the purchasers for the amount

of the mortgages, and had accompanied it with the notes and mortgages and satisfaction pieces. If nothing appeared upon the papers indicating that Mrs. Neely ever had an interest in the mortgages, and it appeared, after the draft had been paid and the mortgages satisfied, that an interest to the extent of $1,200 was owned by her, by previous assignment from Mr. Brice, and that Mr. Brice was not authorized to satisfy or assign that interest, could there be a doubt that her interest could be enforced against the purchasers? A stronger case would be presented, where the papers carried a canceled assignment to Mrs. Neely, with no explanation of how or why or by whom the cancellation had been made.

In *Wright v. Eaves,* 10 Rich. Eq., 582, it is held that the assignee of a mortgage is entitled, as against a subsequent purchaser from or incumbrancers of the mortgagor, to payment in full of the assigned mortgage.

"Of course, if an assignment of a mortgage is not a recordable instrument under the recording statutes and its record would not serve as notice, an assignee of a mortgage cannot be prejudiced by failure to place his assignment on record even though a third person purchases or lends money on the property in reliance of a discharge of record made by the mortgagee." 19 R. C. L. c., 65; note, 15 L. R. A. (N. S.), 1025.

In 1 Jones, Mtg. (6th Ed.), p. 1018, it is said:

"If the discharge is made by one professing to act in a representative capacity, as for instance, an administrator or guardian, and he has not been empowered to act, or has been empowered to act only after giving bond and has failed to comply with this requirement, the discharge will not bind those whom he represents, and will not protect one who afterwards purchases in good faith."

The same rule has been applied to the case of a mortgage to one as attorney. *Hazeltine v. Keenan,* 54 W. Va., 600; 46 S. E., 609; 102 Am. St. Rep., 953.

See also, *Freeman v. Bailey,* 50 S. C., 241; 27 S. E., 686, where it was held that, where a note was payable to one as Probate Judge, a transferee was put upon inquiry, and was bound by whatever disclosures such inquiry would reveal. Also *Ford v. Brown,* 114 Tenn., 467; 88 S. W., 1036; 1 L. R. A. (N. S.), 188.

For these reasons, I think that the decree of the Circuit Court should be reversed, and the case remanded to that Court for judgment in favor of the plaintiff.

ORDER DISMISSING PETITION FOR REHEARING

The petition for a rehearing in this cause having been carefully considered, and, being satisfied that the Court has not overlooked any material fact or principle of law involved in the appeal, it is hereby ordered that petition be, and is hereby, dismissed.

EUGENE S. BLEASE,<br>
JESSE F. CARTER,<br>
J. WM. THURMOND,

T. P. COTHRAN: I dissent.

MR. JUSTICE BLEASE (concurring in dismissal of petition): If the *ex parte* showing made on the petition for rehearing is correct, and at this time I am willing to so concede, I, like Mr. Justice Cothran, was misled as to the nature of the claim filed in Mrs. Neely's behalf against the estate of Mr. Brice. The record before the Court certainly convinced me that Mrs. Neely had filed a claim for the money collected by Brice on the Love note and mortgage. The copy of the claim now presented to the Court shows that she made claim, not for the amount of the collection, but for the papers themselves.

It does not follow, however, because of the error into which some of the justices have fallen, due to the failure of the appellant to see that the record for appeal was properly made up, is just ground for ordering a rehearing of the cause.

When the case was heard, Chief Justice Watts and Associate Justice Stabler were absent on account of illness. The Court was composed of Justices Cothran, Blease, and Carter, and Acting Associate Justice, Hon. J. William Thurmond. Justice Carter, who was assigned to write the opinion of the Court, only held that the report of the Referee and the decree of the Circuit Judge, which confirmed that report, should be sustained. The writer, in his concurring opinion, while agreeing with the holdings of the Special Referee and the Circuit Judge, went into matters other than those mentioned in the report and decree as additional grounds for sustaining the judgment of the lower Court, among them the ratification of Brice's action by Mrs. Neely when she filed the claim for the money collected by Brice, as it was thought the record established. In the opinion of the writer, Mr. Acting Associate Justice Thurmond concurred. The writer and Mr. Acting Associate Justice Thurmond concurred in the opinion of Mr. Justice Carter.

It will be seen, therefore, that, while a majority of the justices, who participated in the hearing of this cause, upheld the decision of the Circuit Court, a majority of the justices did not decide the case on the question of ratification of Brice's acts by Mrs. Neely in filing her claim against Brice's estate.

I still adhere to the principles of law as to ratification, announced in my concurring opinion, although I am willing to concede on the showing made in the petition for rehearing that they are not applicable to the case at bar.

In this connection, I think, however, that the claim, which it now appears Mrs. Neely filed against Brice's estate, is additional proof that Mr. Brice was the agent of Mrs. Neely to lend her money and to make collections thereon; and, if he was not the agent in the particular matter of the Love paper, unfortunately Mrs. Neely allowed him to appear as her agent for that purpose. The claim filed against the estate sets forth that at seven different times, beginning on

January 8, 1916, and ending on June 6, 1922, Mr. Brice collected from various persons several amounts of money, and each of the items says, "Paid J. S. Brice by (naming debtor), for Mrs. M. M. Neely."

I have again gone carefully over the record in this case. I find certain testimony given by Mr. John A. Neely, who, as agent for his mother, filed the claim against Brice's estate, to which I have not formerly called attention, that I think is of especial significance to establish the agency of Mr. Brice for Mrs. Neely. On cross-examination by Mr. Gaston the witness was asked this question:

"*He (Brice) did make collections of interest and principal and remitted to her and then she would be satisfied. That had been his custom to collect money from all his clients and remit to the ones he got the money from. And he remitted to your mother?* .. (Italics added.)

To the stated question, the witness made the following answer: "*Yes; he had that authority.*" (Italics added.)

Even if a rehearing should be granted and additional testimony allowed on the question of ratification by Mrs. Neely, I do not see how it could possibly change the result of the cause.

MR. ACTING ASSOCIATE JUSTICE THURMOND concurs.

MR. JUSTICE COTHRAN (dissenting): I think that the petition for rehearing should be granted for the following reason, if for no other: A very material issue in the case was whether Mr. Brice, in the collection of the note and mortgage, acted as the agent of Mrs. Neely; and it was strongly urged by counsel for the respondents, and in the concurring opinion of Mr. Justice Blease, that, after the death of Mr. Brice, John A. Neely, as the agent of his mother, filed a claim against the Brice estate *for the money which Brice had collected,* and thereby ratified the act of Brice.

In their printed argument counsel for the respondents state:

"The plaintiff herein has therefore filed a claim against the estate of J. S. Brice, whose agency they are now attempting to repudiate, *for this very same sum of money upon which they are suing for foreclosure against the defendants herein.*"

In the concurring opinion of Mr. Justice Blease this occurs:

"The evidence shows that the plaintiff, after the death of Mr. Brice, filed her claim against Mr. Brice's estate, *for the very money which Mr. Brice had collected from Col. Gaston on the mortgage of the land in question.*"

The learned justice then proceeds to cite the cases of *Miles v. Gadsden,* 139 S. C., 52; 137 S. E., 204, and *Miles v. Felkel,* 139 S. C., 95; S. E., 329, to sustain the proposition "that where the mortgagee filed claim against the estate of her agent, or supposed agent, for money collected by such agent on the mortgage debt, such conduct on the part of the mortgagee was evidence of ratification of the agency to collect the money."

The sole evidence upon which the statement was made in both instances was in the testimony of John A. Neely, quoted in the argument of counsel as follows:

"Q. Have you filed any proof of claim against the Brice estate?  A. Yes, sir.

"Q. Did you file any on this?  A. Yes, sir; *for the Love $1,200 note and mortgage.*"

That is all that appears.  The claim as presented was not offered in evidence.  Col. Lewis, the administrator, said not a word about the filing of the claim.  He detailed a conversation with Neely after the death of Brice, and, of course, after the money had been paid to him, thus:

"He made a statement about the papers *that ought to be in Mr. Brice's hands belonging to Mrs. Neely,* and among them he stated that there was a F. P. Love paper for $2,000, payable to J. S. Brice, attorney, and that it was indorsed and assigned.  *  *  *"

No demand for the money collected by Brice, *but for the papers.* Evidently, Neely did not know at that time that the money had been paid to Brice, else he would not have referred to the papers as *"papers that ought to be in Mr. Brice's hands."*

Neither the Special Referee nor the Circuit Judge made a finding with reference to the filing of the claim. It must be conceded that the great emphasis and force which the concurring justice placed upon and drove home the point must have had its effect upon other members of the Court. If there was error in the statement, its baneful effect can only be cured by a rehearing.

I confess to an error on my part in the following statement:

"The evidence shows that, after the death of Brice, and after John A. Neely learned of the receipt by Brice of the $1,200, which belonged to his mother, John A. Neely filed a claim (I will assume as agent for his mother), against the administrator of the estate of Brice, for the amount so received by him,"

—as upon a review of the evidence I am convinced that the record does not bear out the statement.

Inasmuch as the record does not establish anything more than a claim *for the papers,* and not for the money, I think that, as a simple act of justice to the appellant, when it so clearly appears that an error has been committed, which was calculated to affect the decision, the rehearing should be granted, with leave to the appellant to move for an enlargement of the record, or, if need be, that the case be remanded for the purpose of clarifying the situation. It is entirely that, but for the impressive argument upon the question of ratification, the decision would have been that outside of it there was no evidence that, in the transaction consummated by a deliberate spoliation of the evidence of the plaintiff's interest in the note and mortgage, Brice was acting as agent of Mrs. Neely. In fact, his cancellation of the assignment

could have been made with no other intention than to conceal the fact that she had any interest, and that he was acting solely in his own improper interest.